# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION | : : : : | MDL No. 2002 08-md-02002 |
| THIS DOCUMENT RELATES TO No. 2:11-cv-00510-GP | : : : : | |

## UNITED EGG PRODUCERS, INC.'S ANSWER WITH AFFIRMATIVE DEFENSES TO PLAINTIFFS' THIRD AMENDED COMPLAINT

Defendant United Egg Producers, Inc. ("UEP") provides the following answer with affirmative defenses to Plaintiffs Winn-Dixie Stores, Inc., Roundy's Supermarkets, Inc., C&S Wholesale Grocers, Inc., and H.J. Heinz Company, L.P.'s (collectively, "Plaintiffs") Third Amended Complaint ("Third Amended Complaint").

## PRELIMINARY STATEMENT

By way of general response, Federal Rule of Civil Procedure 8(b) requires "short and plain" answers. A denial must fairly meet the substance of the averments, and a party may generally deny all allegations contained in a paragraph except those that are specifically admitted. *See* Fed. R. Civ. P. 8(b). Moreover, the federal rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

UEP denies all allegations contained in the Third Amended Complaint unless specifically admitted. Moreover, any factual averment that is admitted below is admitted only as to specific facts stated therein and not as to any conclusions, legal or otherwise, characterizations, implications or speculation in the averment or the Third Amended Complaint

as a whole.  To the extent that an averment includes a mix of alleged fact and legal conclusion, UEP denies such comingled allegations except those that are specifically admitted.  *See Charleston v. Salon Secrets Day Spa, Inc.,* No. 08-5889, 2009 U.S. Dist. Lexis 53073, at *5 (E.D. Pa. June 24, 2009) (holding that an answer on the basis that the averments assert conclusions of law to which no response is required was sufficient to deny the allegations); *Am. & Foreign Ins. Co. v. Phoenix Petroleum Co.,* No. 97-3349, 1998 U.S. Dist. LEXIS 20411 at *8-9 (E.D. Pa. Dec. 22, 1998) (finding that denials on the basis that the allegations were conclusions of law "meet the substance of the averments" and are "sufficient and do not constitute failures to deny").

Throughout the Third Amended Complaint, Plaintiffs' allegations include quoted material without any attribution or citation.  UEP lacks knowledge or information sufficient to form a belief as to the truth or falsity of those allegations, and UEP therefore denies the same. *See* Fed. R. Civ. P. 8(b) ("If a party is without knowledge or information sufficient to form a belief as to the truth of an averment, the party shall so state and this has the effect of a denial."). UEP has no obligation to investigate the source(s) of material that Plaintiffs purport to characterize or quote without attribution or citation, and UEP denies those allegations.

Similarly, Plaintiffs appear to have extracted many averments in the Third Amended Complaint from documents and other writings, both attributed and unattributed.  UEP denies Plaintiffs' characterization of such documents, which are writings that speak for themselves.  *See Great W. Life Assurance Co. v. Levithan,* 834 F. Supp. 858, 865 (E.D. Pa. 1993) (holding that responses stating that "writings speak for themselves" were sufficient because "such responses are denials of the Plaintiffs' characterization of the writings"); *Am. & Foreign*

*Ins. Co.,* 1998 U.S. Dist. LEXIS 20411, at *8-9 (holding that responses which state that a contract speaks for itself meet the substance of the averments).

Many of the allegations in the Third Amended Complaint concern the knowledge, perception, intention, or motivation of others.  UEP cannot speak to the knowledge, perception, intention, or motivation of others without engaging in speculation.

UEP acknowledges that Plaintiffs purport to define both "shell eggs" and "egg products."  UEP takes no position as to the accuracy of Plaintiffs' purported definitions or terminology.  To the extent UEP admits any allegation that contains this terminology, UEP's admission relates only to the terms as defined by the Plaintiffs.

UEP denies any allegations set forth in or innuendo suggested by Plaintiffs' headings and/or footnotes.

On those occasions in the Third Amended Complaint when Plaintiffs make allegations against all Defendants together, unless otherwise stated in this answer, UEP will answer for itself only, and any allegations directed against other Defendants will be denied.  UEP incorporates this footnote by reference into its response to any paragraph in the Third Amended Complaint that makes global allegations against Defendants as a group.

UEP incorporates this Preliminary Statement into each numbered paragraph of this Answer.

## ANSWER

1.     Denied.  To the extent that the allegations contained in paragraph 1 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 1.

2.     Admitted in part; denied in part.  UEP admits that Plaintiffs purport to define the term "shell eggs" and "egg products."  UEP denies the remaining allegations contained in paragraph 2.

3.     Denied.  UEP lacks knowledge or information sufficient to respond to the allegations contained in paragraph 3, and the same are therefore denied.

4.     Denied.  UEP denies that it is a trade organization.  To the contrary, UEP avers that it is a Capper-Volstead Agricultural Cooperative comprised of producer members.  UEP further avers that some of its members are competitors and/or participate in more than one step in the process of bringing an egg to market and that its members include producers of eggs and egg products and owners of laying hens.  UEP further avers that its membership fluctuated during the alleged relevant time period.  UEP further avers that some of its members sat on the Board of Directors and Executive Committee of UEP during the alleged relevant time period.  To the extent that the allegations contained in paragraph 4 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 4.

5.     Admitted in part; denied in part.  UEP admits that prices of eggs may be influenced by supply, and that reductions in supply may cause the prices of shell eggs and egg products to rise.  UEP lacks knowledge or information sufficient to respond to the allegations contained in paragraph 5 relating to the knowledge of defendants other than UEP, and the same are therefore denied.  To the extent that the allegations contained in paragraph 5 purport to

characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 5.

6.      Admitted in part; denied in part. UEP admits that historically egg prices have fluctuated, and that these fluctuations may be cyclical. To the extent that the allegations contained in paragraph 6 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations about the state of mind, intention and motivation of the egg industry, and the same are therefore denied. UEP denies the remaining allegations contained in paragraph 6.

7.      Admitted in part; denied in part. UEP admits that Don Bell is a poultry specialist and that Mr. Bell has commented on the relationship among supply, demand and price in the egg industry. To the extent that the allegations contained in paragraph 7 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 7.

8.      Denied. To the extent that the allegations contained in paragraph 8(a)-(j) purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 8(a)-(j).

9.      Denied.

10.      Admitted in part; denied in part. UEP admits that, in or around 1999 and 2000, UEP recommended that members molt flocks and reduce flock inventory as voluntary

measures to manage supply.  To the extent that the allegations contained in paragraph 10 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 10.

11.     Admitted in part; denied in part.  UEP admits that, in or around 2001, UEP recommended that members reduce flock inventory as voluntary measures to manage supply.  To the extent that the allegations contained in paragraph 11 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 11 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 11.

12.     Admitted in part; denied in part.  UEP admits that in or around 2002, UEP recommended that members molt flocks and reduce flock inventory as voluntary measures to manage supply.  To the extent that the allegations contained in paragraph 12 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 12.

13.     Denied.  To the extent that the allegations contained in paragraph 13 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations about other defendants' state of mind,

and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 13.

14.    Admitted in part; denied in part.  UEP admits that, in or around 2004, UEP recommended that members molt flocks and reduce flock inventory as voluntary measures to manage supply.  To the extent that the allegations contained in paragraph 14 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 14.

15.    Admitted in part; denied in part.  UEP admits that UEP held an "Economic Summit" meeting on November 16, 2004, and that in or around 2004, UEP recommended that members molt flocks and reduce flock inventory as voluntary measures to manage supply.  To the extent that the allegations contained in paragraph 15 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 15.

16.    Denied.  To the extent that the allegations contained in paragraph 16 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 16.

17.    Denied.  To the extent that the allegations contained in paragraph 17(a)-(k) purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 17(a)-(k).

18.     Denied.  To the extent that the allegations contained in paragraph 18 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 18.

19.     Denied.  To the extent that the allegations contained in paragraph 19 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 19.

20.     Denied.

21.     Denied.  UEP denies the allegations contained in paragraph 21(a)-(i).

22.     Admitted in part; denied in part.  UEP admits that Plaintiffs purport to bring this action under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.  UEP denies that Plaintiffs are entitled to the relief they request.  The remaining allegations contained in paragraph 22 constitute conclusions of law to which no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 22.

23.     Admitted in part; denied in part.  UEP admits that UEA is a non-profit corporation trade association.  UEP further admits that certain defendants produce, promote, process and/or sell shell eggs and/or egg products.  UEP denies the remaining allegations contained in paragraph 23.  By way of further response, UEP avers to the contrary that UEP and USEM are Capper-Volstead Agricultural Cooperatives and that certain of the defendants are members of UEP and/or USEM.

24.     Denied.  The allegations contained in paragraph 24 constitute conclusions of law to which no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 24.

25.     Denied.  The allegations contained in paragraph 25 constitute conclusions of law to which no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 25.

26.     Denied.  UEP lacks knowledge or information sufficient to respond to the allegations contained in paragraph 26, and the same are therefore denied.

27.     Denied.  UEP lacks knowledge or information sufficient to respond to the allegations contained in paragraph 27, and the same are therefore denied.

28.     Denied.  UEP lacks knowledge or information sufficient to respond to the allegations contained in paragraph 28, and the same are therefore denied.

29.     Denied.  UEP lacks knowledge or information sufficient to respond to the allegations contained in paragraph 29, and the same are therefore denied.

30.     Denied.  To the extent that the allegations contained in paragraph 30 relate to UEP, UEP denies those allegations.  UEP lacks knowledge or information sufficient to respond to the allegations contained in paragraph 30 relating to Defendants other than UEP, and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 30.

31.     Admitted in part; denied in part.  UEP admits that Plaintiffs purport to characterize the terms "Defendants," "co-conspirators," and "UEP members" to include all named defendants.  UEP denies that characterization and the remaining allegations contained in paragraph 31.

32.     Admitted in part; denied in part.  UEP admits that Michael Foods, Inc., is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Minnetonka, Minnesota.  UEP further admits that Michael Foods, Inc., produced and sold shell eggs and egg products during the alleged relevant time period.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 32, and the same are therefore denied.

33.     Admitted in part; denied in part.  UEP admits that Michael Foods, Inc., is an egg producer and producer of certain egg products.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 33, and the same are therefore denied.

34.     Admitted in part; denied in part.  UEP admits that Plaintiffs purport to use the term "Michael Food Egg Products Company" to collectively refer to the subsidiaries of Michael Foods, Inc., that comprise Michael Foods Inc.'s Egg Products Division.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 34, and the same are therefore denied.

35.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35, and the same are therefore denied.

36.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36, and the same are therefore denied.

37.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37, and the same are therefore denied.

38.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38, and the same are therefore denied.

39.     Admitted in part; denied in part.  UEP admits that Michael Foods, Inc., was a member of UEP at certain times during the alleged relevant time period.  UEP further admits that individuals affiliated with Michael Foods, Inc., have attended UEP meetings at certain times during the alleged relevant time period and have served on the following UEP Committees:  Government Relations Committee, Environmental Committee, Quality Assurance/Food Safety Committee, Producer Committee for Animal Welfare, and Long Range Planning Committee.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the first sentence of paragraph 39, and the same are therefore denied.  To the extent that the allegations contained in paragraph 39 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 39.

40.     Denied.  To the extent that the allegations contained in paragraph 40 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 40.

41.     Admitted in part; denied in part.  UEP admits that Rose Acre Farms, Inc., is a corporation organized and existing under the laws of the State of Indiana, with its principal place of business in Seymour, Indiana.  UEP further admits that Rose Acre Farms, Inc., produced and sold shell eggs and egg products during the alleged relevant time period.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 41, and the same are therefore denied.

42.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42, and the same are therefore denied.

43.     Admitted in part; denied in part.  UEP admits that Rose Acre Farms, Inc., participates in more than one step in the process of bringing an egg to market.  To the extent that the allegations contained in paragraph 43 are conclusions of law, no response is required, and they are thus deemed denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 43, and the same are therefore denied.

44.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44, and the same are therefore denied.

45.     Admitted in part; denied in part.  UEP admits that Rose Acre Farms, Inc., was a member of UEP at certain times during the alleged relevant time period.  UEP further admits that individuals affiliated with Rose Acre Farms, Inc., attended UEP meetings at certain times during the alleged relevant time period, and served on the following UEP Committees in 2008:  Government Relations Committee, Shell Egg Price Discovery Committee, Shell Egg Marketing Committee, Environmental Committee, Producer Committee for Animal Welfare, Public Relations Committee, Long Range Planning Committee, and Environmental Scientific Panel.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the first two sentences of paragraph 45, and the same are therefore denied.  To the extent that the allegations contained in paragraph 45 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 45.

46.     Admitted in part; denied in part.  UEP admits that it held various UEP meetings in 2004, in which it recommended voluntary measures to manage supply, but without more detail, UEP lacks knowledge or information sufficient to respond to the remaining

allegations contained in the third sentence of paragraph 46, and the same are therefore denied. UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning USEM membership, and the same are therefore denied.  To the extent that the allegations contained in paragraph 46 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 46.

47.     Admitted in part; denied in part.  UEP admits that National Food Corporation is a corporation organized and existing under the laws of the State of Washington, with its principal place of business in Everett, Washington.  UEP further admits that National Food Corporation produced and sold shell eggs and egg products during the alleged relevant time period.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 47 and the same are therefore denied.

48.     Admitted in part; denied in part.  UEP admits that National Food Corporation is an egg producer and processes eggs and egg products.  UEP further admits that National Food Corporation participates in more than one step in the process of bringing an egg to market.  To the extent that the allegations contained in paragraph 48 are conclusions of law, no response is required, and they are thus deemed denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 48, and the same are therefore denied.

49.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 49, and the same are therefore denied.

50.     Admitted in part; denied in part.  UEP admits that National Food Corporation was a UEP member and that individuals affiliated with National Food Corporation served as the Chairman of UEP at certain times during the alleged relevant time period.  UEP

admits that individuals affiliated with National Food Corporation attended UEP meetings at certain times during the alleged relevant time period and served on the following UEP Committees in 2008:  Shell Egg Price Discovery Committee, Shell Egg Marketing Committee, Public Relations Committee, and Long Range Planning Committee.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the third sentence of paragraph 50, and the same are therefore denied.  To the extent that the allegations contained in paragraph 50 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 50.

51.     Admitted in part; denied in part.  UEP admits that it held various UEP meetings in 2004, in which it recommended voluntary measures to manage supply, but without more detail, UEP lacks knowledge or information sufficient to respond to the remaining allegations contained in the fifth sentence of paragraph 51, and the same are therefore denied.  To the extent that the allegations contained in paragraph 51 purport to characterize the contents of documents, UEP denies Plaintiffs' characterization of the documents, which are writings that speak for themselves.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning USEM membership, and the same are therefore denied.  To the extent that the allegations contained in paragraph 51are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 51.

52.     Admitted in part; denied in part.  UEP admits that Cal-Maine Foods, Inc., is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Jackson, Mississippi.  UEP further admits that Cal-Maine Foods, Inc., produced and sold shell eggs and egg products during the alleged relevant time period.  UEP

lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 52, and the same are therefore denied.

53.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first two sentences of paragraph 53, and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 53.

54.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 54, and the same are therefore denied.

55.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 55, and the same are therefore denied.

56.     Admitted in part; denied in part.  UEP admits that Cal-Maine Foods, Inc., was a UEP member at certain times during the alleged relevant time period.  UEP further admits that individuals affiliated with Cal-Maine Foods, Inc., attended UEP meetings at certain times during the alleged relevant time period, and served on the following UEP Committees in 2008: Executive Committee, Finance Committee, Shell Egg Price Discovery Committee, Shell Egg Marketing Committee, Quality Assurance/Food Safety Committee, Producer Committee for Animal Welfare, and Long Range Planning Committee.  UEP admits that an individual affiliated with Cal-Maine Foods, Inc., served as UEP Chairman and as Chairman of UEP's Executive Committee at certain times during the alleged relevant time period.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the third sentence of paragraph 56, and the same are therefore denied.  To the extent that the allegations contained in paragraph 56 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 56.

57.     Admitted in part; denied in part.  UEP admits that it held various UEP meetings in 2004, in which it recommended voluntary measures to manage supply, but without more detail, UEP lacks knowledge or information sufficient to respond to the remaining allegations contained in the fifth sentence of paragraph 57, and the same are therefore denied. To the extent that the allegations contained in paragraph 57 purport to characterize the contents of documents, UEP denies Plaintiffs' characterization of these documents, which are writings that speak for themselves.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning USEM membership, and the same are therefore denied. To the extent that the allegations contained in paragraph 57 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 57.

58.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 58, and the same are therefore denied.

59.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 59, and the same are therefore denied.

60.     Denied.  To the extent that the allegations contained in paragraph 60 purport to characterize Cal-Maine's Form 8-K, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 60, and the same are therefore denied.

61.     Admitted in part; denied in part.  UEP admits that Hillandale Farms of Florida, Inc., was a UEP member at certain times during the alleged relevant time period.   UEP further admits that Hillandale Farms of Florida, Inc., participated in the UEP Certified program,

certification number 200, at certain times during the relevant time period.  UEP further admits that the meeting minutes for the UEP Board of Directors Meeting on May 11-12, 2004, indicate that Ray Chambers was in attendance, that the meeting minutes for the UEP Annual Membership Meeting on October 21, 2004, indicate that Ray Chambers and Bob Randall were in attendance, and that the meeting minutes for the UEP Producer Committee for Animal Welfare on May 12, 2003, indicate that Ray Chambers was in attendance.  To the extent that the allegations contained in paragraph 61 purport to characterize documents, UEP denies Plaintiffs' characterization of these documents, which are writings that speaks for themselves.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning USEM membership, and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 61.

62.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 62, and the same are therefore denied.

63.     Admitted in part; denied in part.  UEP admits that Hillandale LLC, was a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Florida.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 63, and the same are therefore denied.

64.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 64, and the same are therefore denied.

65.     Denied.  UEP admits that Hillandale LLC owned production facilities in Florida.  UEP further admits that Hillandale LLC, participated in more than one step in the process of bringing an egg to market.  UEP further admits that Hillandale LLC participated in the UEP Certified program, certification number 200, at certain times during the relevant time period

and that certification number 200 had previously been used by Hillandale Farms of Florida, Inc. To the extent that the allegations contained in paragraph 65 purport to characterize documents, UEP denies Plaintiffs' characterization of these documents, which are writings that speaks for themselves.  UEP denies the remaining allegations contained in paragraph 65.

66.     Denied.  To the extent that the allegations contained in paragraph 66 purport to characterize a Cal-Maine document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 66, and the same are therefore denied.

67.     Admitted in part; denied in part.  UEP admits that Bob Randall served on UEP's Shell Egg Marketing Committee at certain times during the alleged relevant time period. To the extent that the allegations contained in paragraph 67 purport to characterize an unidentified document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 67.

68.     Denied.  UEP denies that representatives of Hillandale Farms of PA, Inc., Hillandale-Gettysburg, L.P., Hillandale Farms East, Inc., and Hillandale Farms, Inc., operating under the common shared name "Hillandale Farms" participated in UEP meetings and committees.  UEP further denies that it was aware of the business ownership structure of each of the Hillandale companies during the alleged relevant time period.   UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 68, and the same are therefore denied.

69.     Admitted in part; denied in part.  UEP admits that Hillandale Farms, Inc., Hillandale Farms PA, Inc., Hillandale-Gettysburg, L.P., and Hillandale Farms East, Inc.,

produced and/or sold and/or marketed UEP Certified eggs under certification number 182.  UEP

denies that Hillandale Farms, Inc., Hillandale Farms of Pa., Inc., and Hillandale Farms East, Inc.,

participated in UEP at any time during the alleged relevant time period.  To the extent that the

allegations contained in paragraph 69 are conclusions of law, no response is required, and they

are thus deemed denied.  UEP lacks knowledge or information sufficient to form a belief as to

the truth of the remaining allegations contained in paragraph 69, and the same are therefore

denied.

        70.     Admitted in part; denied in part.  UEP admits that Plaintiffs purport to

define "Hillandale Farms" as set forth in paragraph 68.  To the extent that the allegations

contained in paragraph 70 purport to characterize information posted on a website, from which

Plaintiffs purport to have extracted certain allegations contained in paragraph 70, UEP denies

Plaintiffs' characterization of the website, which is a writing that speaks for itself.  UEP denies

that the entities Hillandale Farms of Pa, Inc., Hillandale Farms East, Inc., and Hillandale Farms,

Inc., participated in UEP.  UEP denies the allegations contained the final sentence of paragraph

70.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the

remaining allegations contained in paragraph 70, and the same are therefore denied.

        71.     UEP admits that Hillandale Farms of Pa., Inc., is a corporation organized

and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of

business in North Versailles, Pennsylvania.  UEP further admits that Hillandale Farms of Pa.,

Inc., marketed and sold eggs UEP Certified eggs produced by Hillandale-Gettysburg, L.P., at

certain times during the alleged relevant time period.  UEP lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 71,

and the same are therefore denied.

72.     Admitted in part; denied in part.  UEP admits that Hillandale Farms of Pa., Inc., marketed and sold eggs to purchasers in the United States.  To the extent that the allegations contained in paragraph 72 purport to characterize documents, UEP denies Plaintiffs' characterization of the documents, which are writings that speak for themselves.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 72, and the same are therefore denied.

73.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 73, and the same are therefore denied.

74.     Admitted in part, denied in part.  UEP admits that, at certain times during the alleged relevant time period, Hillandale Farms of Pa., Inc., received UEP Certification number 182.  UEP further admits that Gary Bethel served on UEP's Shell Egg Marketing Committee at certain times during the alleged relevant time period.  UEP further admits that the meeting minutes for certain meetings of UEP's Board of Directors indicate that Mr. Bethel was in attendance.  To the extent that the allegations contained in paragraph 74 purport to characterize documents, UEP denies Plaintiffs' characterization of the documents, which are writings that speak for themselves.  UEP denies the remaining allegations contained in paragraph 74.

75.     Denied.

(a)     Admitted in part; denied in part.  UEP admits that at the UEP Annual Board Meeting held on October 11-12, 2002, in Savannah, Georgia, a motion passed that required producers who voluntarily chose to participate in the UEP animal welfare program to comply with UEP's animal welfare guidelines at all of the producer's

production facilities.  UEP lacks knowledge or information

sufficient to form a belief as to the truth of the allegations

contained in the second sentence of paragraph 75(a), and the same

are therefore denied.  To the extent that the allegations contained in

paragraph 75(a) purport to characterize meeting minutes, UEP's

Animal Husbandry Guidelines, or other unidentified documents,

UEP denies Plaintiffs' characterization of those documents, which

are writings that speak for themselves.  UEP denies the remaining

allegations contained in paragraph 75(a).

(b)    Admitted in part; denied in part.  UEP admits that certain entities

were permitted to market eggs produced under the UEP animal

welfare program if the entity obtained a marketing license, paid

annual licensing fees, and agreed to submit periodic audits and

reports, among other things.  UEP further admits that at certain

times during the alleged relevant period, Hillandale Farms East,

Inc., and Hillandale Farms, Inc., were non-producers that marketed

and sold under certification number 182 eggs which bore the UEP

or ACC certified logo.  UEP further admits that Hillandale Farms

East, Inc., marketed and sold certified eggs produced by Hillandale

Gettysburg, L.P.  UEP further admits that Hillandale Farms East,

Inc., and Hillandale Farms, Inc., have not executed non-certified

license agreements for marketing UEP certified eggs or paid

licensing fees to UEP.  UEP lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in the second sentence of paragraph 75(b) and the allegations concerning whether the Hillandale entities listed in the fourth and fifth sentences of paragraph 75(b) were part of a single integrated production enterprise, and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 75(b).

76.     Admitted in part; denied in part.  UEP admits that Hillandale-Gettysburg, L.P., is a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Gettysburg, Pennsylvania.  UEP further admits that Hillandale-Gettysburg produced and sold shell eggs during the alleged relevant time period.  UEP lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in the first three sentences of paragraph 76, and the same are therefore denied.

(a)     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 76(a), and the same are therefore denied.

(b)     Denied.  To the extent that the allegations contained in paragraph 76(b) purport to characterize information posted on a website, from which Plaintiffs purport to have extracted certain allegations contained in paragraph 76(b), UEP denies Plaintiffs' characterization of the website, which is a writing that speaks for itself.  UEP lacks knowledge or information sufficient to form a

belief as to the remaining allegations contained in paragraph 76(b), and the same are therefore denied.

(c)    Admitted in part; denied in part.  UEP admits that Hillandale-Gettysburg, L.P., was a UEP member at certain times during the alleged relevant time period.  UEP further admits that the meeting minutes for certain meetings of UEP's Board of Directors indicate that Gary Bethel was in attendance.  UEP further admits that Gary Bethel and Ron Ballew are affiliated with Hillandale-Gettysburg, L.P., that Mr. Bethel served on UEP's Shell Egg Marketing Committee in 2004 and 2005, and that Mr. Ballew served on UEP's Environmental Committee in 2008.  UEP lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 76(c), and the same are therefore denied.

(d)    Admitted in part; denied in part.  UEP admits that Hillandale-Gettysburg, L.P., produced and packed UEP Certified eggs under certification number 182 at certain times during the alleged relevant time period.  UEP further admits that Hillandale-Gettysburg, L.P., submitted compliance reports to UEP documenting compliance with UEP animal husbandry and/or UEP Certified guidelines at certain times during the alleged relevant time period, as required to maintain UEP Certified status.  UEP denies the remaining allegations contained in paragraph 76(d).

77.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the allegations contained in the first three sentences of paragraph 77, and the same are therefore denied.

(a)    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 77(a), and the same are therefore denied.

(b)    Admitted in part; denied in part.  UEP admits that Hillandale Farms East, Inc., marketed and sold eggs produced by Hillandale-Gettysburg, L.P., which bore the UEP or ACC Certified logos.  UEP lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in the paragraph 77(b), and the same are therefore denied.

(c)    Admitted in part; denied in part.  UEP admits that Hillandale Farms East, Inc., sold and/or marketed UEP Certified eggs under certification number 182 at certain times during the alleged relevant time period.  UEP further admits that Hillandale Farms East, Inc., has not executed a non-certified license agreement for marketing UEP certified eggs or paid licensing fees to UEP.  UEP denies the remaining allegations contained in paragraph 77(c).

(d)    Admitted in part; denied in part.  UEP admits that James Minken served on UEP's Shell Egg Marketing Committee in 2008 and 2009, and that the meeting minutes for certain UEP meetings, including the May 12, 2008 meeting of UEP's Shell Egg

-24-

Marketing Committee, indicate that Mr. Minken was in attendance. UEP further admits that UEP staff communicated with James Minkin using the nearbyeggs@msn.com email address. UEP further admits that the meeting minutes for certain meetings of UEP's Board of Directors indicate that Gary Bethel was in attendance. UEP further admits that Gary Bethel served on UEP's Shell Egg Marketing Committee in 2004 and 2005. To the extent that the allegations contained in paragraph 77(d) purport to characterize unidentified meeting minutes or emails, from which it appears that Plaintiffs have derived some of the allegations contained in paragraph 77(d), UEP denies Plaintiffs' characterization of the meeting minutes or emails, which are writings that speaks for themselves. UEP denies that Hillandale Farms East, Inc., participated in UEP. UEP denies the remaining allegations contained in paragraph 77(d).

(e)     Admitted in part; denied in part. UEP admits that Hillandale Farms East, Inc., sold and/or marketed UEP Certified eggs, including certified eggs produced by Hillandale-Gettysburg, L.P., under certification number 182 at certain times during the alleged relevant time period. UEP further admits that Hillandale Farms East, Inc., has not executed a non-certified company license agreement for marketing UEP certified eggs or paid licensing fees

to UEP.  UEP denies the remaining allegations contained in paragraph 77(e).

78.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the allegations contained in the first four sentences of paragraph 78, and the same are therefore denied.

(d)     (*sic*)  Admitted in part; denied in part.  UEP admits that Gary Bethel served on UEP's Shell Egg Marketing Committee in 2004 and 2005.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 78(d) (*sic*), and the same are therefore denied.

(e)     (*sic*)  Admitted in part; denied in part.  UEP admits that Hillandale Farms, Inc., has not executed a non-certified company license agreement for marketing UEP certified eggs or paid licensing fees to UEP.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 78(e) (*sic*), and the same are therefore denied.

(f)     (*sic*)  Denied.  UEP admits that Hillandale Farms, Inc., sold and/or marketed UEP Certified eggs under certification number 182 at certain times during the alleged relevant time period.  UEP further admits that Hillandale Farms, Inc., has not executed a non-certified company license agreement for marketing UEP certified eggs or paid licensing fees to UEP.  UEP denies that Hillandale Farms,

Inc., participated in UEP.  UEP denies the remaining allegations contained in paragraph 78(f) (*sic*).

79.     Admitted in part; denied in part.  UEP admits that Ohio Fresh Eggs, LLC, is a limited liability company with its principal place of business located in Croton, Ohio.  UEP further admits that Ohio Fresh Eggs, LLC, owns egg production facilities in Ohio, and was a member of UEP at certain times during the alleged relevant time period.  To the extent that the allegations in paragraph 79 purport to characterize the contents of documents, UEP denies Plaintiffs' characterization of these documents, which are writings that speak for themselves.  To the extent that the allegations contained in paragraph 79 are conclusions of law, no response is required, and they are thus deemed denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 79(a), and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 79, including subpart 79(b).

80.     Admitted in part; denied in part.  UEP admits that Daybreak Foods, Inc., is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business in Lake Mills, Wisconsin.  UEP further admits that Daybreak Foods, Inc., produced and sold eggs during the alleged relevant time period.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 80, and the same are therefore denied.

81.     Admitted in part; denied in part.  UEP admits that Daybreak Foods, Inc., was a UEP member at certain times during the alleged relevant time period.  UEP further admits that individuals affiliated with Daybreak Foods, Inc., served on the following UEP Committees in 2008:  Government Relations Committee, Environmental Committee, and Quality

Assurance/Food Safety Committee.  UEP denies the remaining allegations contained in paragraph 81.

81.     Admitted in part; denied in part.  UEP admits that it held various UEP meetings in 2004, in which it recommended voluntary measures to manage supply, but without more detail, UEP lacks knowledge or information sufficient to respond to the remaining allegations contained in the third sentence of paragraph 82, and the same are therefore denied.  To the extent that the allegations contained in paragraph 82 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 82.  UEP further avers that Daybreak Foods, Inc., is not, and has never been, a UEP Certified member.

83.     Admitted in part; denied in part.  UEP admits that Midwest Poultry Services, L.P., is a limited partnership organized and existing under the laws of the State of Indiana, with its principal place of business in Mentone, Indiana.  UEP further admits that Midwest Poultry Services, L.P., produced and sold eggs during the alleged relevant time period.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 83, and the same are therefore denied.

84.     Admitted in part; denied in part.  UEP admits that Midwest Poultry Services, L.P., was a UEP member at certain times during the alleged relevant time period.  UEP further admits that individuals affiliated with Midwest Poultry Services, L.P., attended UEP meetings at certain times during the alleged relevant time period and served on the following UEP Committees in 2008:  Executive Committee, Finance Committee, Shell Egg Price Discovery Committee, Environmental Committee, and Producer Committee for Animal Welfare.  UEP admits that an individual affiliated with Midwest Poultry Services, L.P., served as First

Vice Chairman of UEP's Executive Committee in 2008.  To the extent that the allegations contained in paragraph 84 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 84.

85.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning USEM membership, and the same are therefore denied.  To the extent that the allegations in paragraph 85 purport to characterize documents, UEP denies Plaintiffs' characterization of these documents, which are writings that speak for themselves.  To the extent that the allegations contained in paragraph 85 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 85.

86.     Admitted in part; denied in part.  UEP admits that NuCal Foods, Inc., is a Capper-Volstead corporation organized and existing under the laws of the State of California, with its principal place of business in Ripon, California.  UEP further admits that NuCal Foods, Inc., sold eggs during the alleged relevant time period.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 86, and the same are therefore denied.

87.     Admitted in part; denied in part.  UEP admits that NuCal Foods, Inc., is a Capper-Volstead agricultural cooperative organized and existing under the State of California, and that NuCal Foods, Inc., markets and sells eggs produced by Gemperle Enterprises, Inc., of Turlock, CA; Sunrise Farms, LLC, of Petaluma, CA; J.S. West Milling Co., Inc., of Modesto, CA; and Valley Fresh Foods, Inc., of Turlock, CA.  UEP denies the remaining allegations contained in paragraph 87.

88.     Admitted in part; denied in part.  UEP admits that farmers affiliated with NuCal Foods, Inc., are egg producers and that NuCal Foods, Inc., participates in the process of bringing an egg to market.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 88, and the same are therefore denied.

89.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 89, and the same are therefore denied.

90.     Admitted in part; denied in part.  UEP admits that NuCal Foods, Inc., was a UEP member at certain times during the alleged relevant time period.  UEP further admits that individuals affiliated with NuCal Foods, Inc., attended UEP meetings at certain times during the alleged relevant time period and served on the following UEP Committees in 2008:  Shell Egg Price Discovery Committee, Shell Egg Marketing Committee, and Quality Assurance Food Safety Committee.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the second sentence of paragraph 90, and the same are therefore denied.  To the extent that the allegations contained in paragraph 90 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 90.

91.     Admitted in part; denied in part.  UEP admits that it held various UEP meetings in 2004, in which it recommended voluntary measures to manage supply, but without more detail, UEP lacks knowledge or information sufficient to respond to the remaining allegations contained in the fourth sentence of paragraph 91, and the same are therefore denied. UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning USEM membership, and the same are therefore denied.  To the extent that the

allegations in paragraph 91 purport to characterize documents, UEP denies Plaintiffs' characterization of these documents, which are writings that speak for themselves. To the extent that the allegations contained in paragraph 91 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 91.

92.     Admitted in part; denied in part.  UEP admits that R.W. Sauder, Inc., is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business in Lititz, Pennsylvania.  UEP further admits that R.W. Sauder, Inc., produced and sold shell eggs and egg products during the alleged relevant time period.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 92, and the same are therefore denied.

93.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 93, and the same are therefore denied.

94.     Admitted in part; denied in part.  UEP admits that R.W. Sauder, Inc., was a UEP member at certain times during the alleged relevant time period.  UEP further admits that individuals affiliated with R.W. Sauder, Inc., attended UEP meetings at certain times during the alleged relevant time period and served on the following UEP Committees in 2008:  Shell Egg Price Discovery Committee, Producer Committee for Animal Welfare, and Public Relations Committee.  UEP admits that an individual affiliated with R.W. Sauder, Inc., served as Committee Chairman of UEP's Public Relations Committee in 2008.  To the extent that the allegations contained in paragraph 94 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 94.

95.     Admitted in part; denied in part.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning USEM membership, and the same are therefore denied.  To the extent that the allegations contained in paragraph 95 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 95.

96.     Admitted in part; denied in part.  It is admitted that Sparboe Farms, Inc., is a corporation organized and existing under the laws of the State of Minnesota with its principal place of business in Litchfield, Minnesota.  To the extent that the allegations contained in paragraph 96 purport to characterize information posted on Sparboe Farms, Inc.'s, website, from which it appears that Plaintiffs have extracted certain allegations contained in paragraph 96, UEP denies Plaintiffs' characterization of the website, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 96 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 96.

97.     Admitted in part; denied in part.  UEP admits that Sparboe Farms, Inc., was a member of UEP at certain times during the alleged relevant time period.  UEP further admits that individuals affiliated with Sparboe Farms, Inc., attended UEP meetings at certain times during the alleged relevant time period, and served on certain UEP committees at certain times during the alleged relevant time period.  To the extent that the allegations contained in paragraph 97 are conclusions of law, no response is required, and they are thus deemed denied. UEP denies the remaining allegations contained in paragraph 97.

98.     Admitted in part; denied in part.  UEP admits that an individual affiliated with Sparboe Farms, Inc., served on the UEP Animal Welfare Committee at certain times during

the alleged relevant time period, and that Sparboe Farms, Inc., was involved in the development

of the ACC/UEP Certified program.  UEP admits that Sparboe Farms, Inc., participated in the

UEP Certified program at certain times during the alleged relevant time period.  To the extent

that the allegations contained in paragraph 98 are conclusions of law, no response is required,

and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph

98.

   99. Admitted in part; denied in part.  UEP admits that UEP is a Capper-

Volstead Agricultural Cooperative corporation organized and existing under the laws of the State

of Georgia, with its principal place of business in Alpharetta, Georgia.  UEP denies the

remaining allegations contained in paragraph 99.

   100. Admitted in part; denied in part.  UEP admits that UEA is a non-profit

corporation organized and existing under the laws of the District of Columbia, with its principal

place of business in Alpharetta, Georgia.  UEP denies the remaining allegations contained in

paragraph 100.

   101. Admitted in part; denied in part.  UEP admits that USEM is a Capper-

Volstead Agricultural Cooperative organized and existing under the laws of the State of Georgia,

with its principal place of business in Alpharetta, Georgia.  UEP denies the remaining allegations

contained in paragraph 101.

   102. Denied.  The allegations of paragraph 102 constitute conclusions of law to

which no response is required, and they are thus deemed denied.  UEP denies the remaining

allegations contained in paragraph 102.

103.    Denied.  To the extent that the allegations contained in paragraph 103 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 103.

104.    Denied.   To the extent that the allegations contained in paragraph 104 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 104.

105.    Admitted in part; denied in part.  UEP admits that Plaintiffs purport to make all averments against the entities set forth in paragraph 105.  To the extent that the allegations contained in paragraph 105 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 105.

106.    Denied.  To the extent that the allegations contained in paragraph 106 purport to characterize a report published by the United States International Trade Commission, UEP denies Plaintiffs' characterization of the report, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 106.

107.    Admitted in part; denied in part.  UEP admits that shell eggs may include table eggs that are sold for consumption, and breaking eggs that are used in egg products.  UEP further admits that grocery stores, restaurants, hotels and other retailers are among those who may purchase shell eggs  To the extent that the allegations contained in paragraph 107 purport to characterize a report published by the United States International Trade Commission, UEP denies Plaintiffs' characterization of the report, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 107.

108.    Denied.  UEP lacks knowledge or information sufficient to respond to the allegations contained in paragraph 108, and the same are therefore denied.

109.     Admitted in part; denied in part.  UEP admits that egg processing may include, among other things, breaking, filtering, mixing, stabilizing, blending, pasteurizing, cooling, freezing, drying and/or packaging, and that the food manufacturing and foodservice industries are among those that may purchase egg products, as Plaintiffs define them.  UEP denies the remaining allegations contained in paragraph 109.

110.     Admitted in part; denied in part.  UEP admits that liquid egg production may involve, among other things, breaking, pasteurizing and/or packing; that whole eggs, egg whites and egg yolks may be used to produce liquid eggs; that frozen egg production may involve, among other things, breaking, pasteurizing and freezing; that dried egg production may involve spray drying; and that egg whites may be dried on trays.  UEP denies the remaining allegations contained in paragraph 110.

111.     Admitted in part; denied in part.  UEP admits that egg products may be used as an ingredient in commercial baked goods and food items like mayonnaise, pasta and salad dressing and that foodservice industry operators may use egg products for convenience and safety.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 111, and the same are therefore denied.

112.     Denied.  To the extent that the allegations contained in paragraph 112 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 112.

113.     Denied.  To the extent that the allegations contained in paragraph 113 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is  a writing that speaks for itself.  UEP lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 113, and the same are therefore denied.

114.    Denied.  To the extent that the allegations contained in paragraph 114 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 114.

115.    Admitted in part; denied in part.  UEP admits that egg producers may perform more than one step in the process of bringing an egg to market, and that egg producers may own and raise egg laying hens and/or process eggs.  To the extent that the allegations contained in paragraph 115 are conclusions of law, no response is required, and they are thus deemed denied.  To the extent that the allegations contained in paragraph 115 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is  a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 115.

116.    Denied.  The allegations contained in paragraph 116 purport to characterize a report published by the United States International Trade Commission, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 116.  UEP denies Plaintiffs' characterization of the report, which is a writing that speaks for itself.

117.    Admitted in part; denied in part.  UEP admits that certain egg producers may own and/or purchase laying hens, that hatcheries may deliver chicks to egg producers within one to two days of hatching, and that chicks may be placed in a pullet house.  To the extent that the allegations contained in paragraph 117 are conclusions of law, no response is required, and they are thus deemed denied.  To the extent that the allegations contained in paragraph 117 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the

document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 117.

118.    Admitted.

119.    Admitted in part; denied in part.  UEP admits that egg producers may raise pullets in cages, that cages may facilitate production and separate egg laying hens from feces, and that egg producers may regulate egg laying hens' exposure to light.  To the extent that the allegations contained in paragraph 119 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 119.

120.    Admitted in part; denied in part.  UEP admits that an increase in light exposure and changes in diet may prompt a hen to lay eggs.  To the extent that the allegations contained in paragraph 120 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 120.

121.    Admitted in part; denied in part.  UEP admits that laying hens may lay eggs when they reach 18-22 weeks of age, that peak egg production may occur when a laying hen is between 30-32 weeks of age, and that egg production may decrease as hens reach 60-70 weeks of age.  To the extent that the allegations contained in paragraph 121 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 121.

122.    Admitted in part; denied in part.  UEP admits that in commercial egg production, molting may provide a way to extend the life of a hen and to rejuvenate the

-37-

reproductive cycle of the hen, and that egg producers may choose to molt egg laying hens.  UEP further admits that egg production temporarily ceases during molting, and that molting may therefore temporarily impact the supply of eggs.  To the extent that the allegations contained in paragraph 122 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 122.

123.    Admitted in part; denied in part.  UEP admits that molting is a natural process of chickens and other feathered species, in which birds shed and renew old, worn plumage and temporarily cease egg production.  UEP further admits that in commercial egg production, induced molting may be accomplished by manipulating light exposure.  UEP denies the remaining allegations contained in paragraph 123.

124.    Admitted in part; denied in part.  UEP admits that egg production will begin again following a molt.  UEP denies the remaining allegations contained in paragraph 124.

125.    Admitted in part; denied in part.  UEP admits that the term "spent hen" refers to egg-laying hens who have reached the end of their reproductive cycle. UEP further admits that egg producers may elect to depopulate spent hens on-site, or through a processing or rendering facility.  UEP denies the remaining allegations contained in paragraph 125.

126.    Admitted in part; denied in part.  UEP admits that egg laying hens may reach the end of their egg laying production cycle when they are 100-130 weeks of age, and that egg producers may elect to molt or dispose of egg-laying hens.  To the extent that the allegations contained in paragraph 126 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 126.

127.   Admitted in part; denied in part.  UEP admits that some shell eggs are collected using nylon belts and that some shell eggs are sent to a storage cooler or to an egg processing center, where they may be washed, inspected and/or graded.  UEP denies the remaining allegations contained in paragraph 127.

128.   Admitted in part; denied in part.  UEP admits that shell eggs may be packed for sale or separated for further processing.  UEP denies the remaining allegations contained in paragraph 128.

129.   Admitted in part; denied in part.  UEP admits that packed shell eggs may be stored in cooler rooms while awaiting shipping.  UEP denies the remaining allegations contained in paragraph 129.

130.   Admitted in part; denied in part.  UEP admits that the majority of commercial egg production in the United States is derived from caged layers with non-organic feed.  UEP denies the remaining allegations contained in paragraph 130.

131.   Admitted in part; denied in part.  UEP admits that USDA Organic eggs are produced following the USDA National Organic Program standards, which are written standards that speak for themselves.  UEP denies the remaining allegations contained in paragraph 131.

132.   Admitted in part; denied in part.  UEP admits that "free range" hens may have access to the outdoors and that "cage free" hens are not housed in cages.  UEP denies the remaining allegations contained in paragraph 132.

133.   Admitted in part; denied in part.  UEP admits that Plaintiffs purport to exclude from this lawsuit "specialty eggs," as plaintiffs define them.  UEP denies the remaining allegations contained in paragraph 133.

134.    Admitted in part; denied in part.  UEP admits that Cal-Maine Foods, Inc., is the largest U.S. egg producer.  To the extent that the allegations contained in paragraph 134 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 134, and the same are therefore denied.

135.    Admitted in part; denied in part.  UEP admits that there are fewer egg producers today than existed 20 years ago.  To the extent that the allegations contained in paragraph 135 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 135, and the same are therefore denied.

136.    Admitted.

137.    Denied.  To the extent that the allegations contained in paragraph 137 purport to characterize a document published by the United States International Trade Commission, UEP denies Plaintiffs' characterization of the report, which is writing that speaks for itself.  To the extent that the allegations contained in paragraph 137 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 137.

138.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 138, and the same are therefore denied.

139.    Admitted in part; denied in part.  UEP admits that shipping costs, perishability and potential breakage may influence the locales to which eggs are exported.  UEP

lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 139, and the same are therefore denied.

140.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in first three sentences of paragraph 140, and the same are therefore denied.  To the extent that the allegations contained in the fifth and sixth sentences of paragraph 140 purport to characterize reports published by the USDA and the United States International Trade Commission, UEP denies Plaintiffs' characterization of the reports, which are written documents that speak for themselves.  UEP denies the remaining allegations contained in paragraph 140.

141.    Denied.  To the extent that the allegations contained in paragraph 141 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 141, and the same are therefore denied.

142.    Admitted.

143.    Denied.  To the extent that the allegations contained in paragraph 143 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 143, and the same are therefore denied.

144.    Admitted in part; denied in part. UEP admits that prices of eggs may be influenced by supply and that reductions in supply may cause the prices of eggs to rise.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations

contained in the third sentence of paragraph 144, and the same are therefore denied. To the extent that the allegations contained in paragraph 144 purport to characterize articles published in *Egg Industry* or UEP's *United Voices* newsletter, UEP denies Plaintiffs' characterization of the publications, which are written documents that speak for themselves. UEP denies the remaining allegations contained in paragraph 144.

145.    Admitted in part; denied in part. UEP admits that Bob Krouse is affiliated with Midwest Poultry Services, L.P.; that Midwest Poultry Services, L.P., was a UEP member at certain times during the alleged relevant time period; and that Mr. Krouse served as UEP's First Vice Chairman at certain times during the alleged relevant time period. To the extent that the allegations contained in the first sentence of paragraph 145 are conclusions of law, no response is required and they are deemed denied. To the extent that the allegations contained in the second sentence of paragraph 145 purport to characterize an article published in the February 2008 edition of *Egg Industry*, from which it appears that Plaintiffs have extracted certain allegations contained in paragraph 145, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 145.

146.    Admitted in part; denied in part. UEP admits that Bill Rehm is the President of UEP member and defendant Daybreak Foods, Inc. To the extent that the allegations contained in paragraph 146 purport to characterize an article published in the February 2007 edition of *Egg Industry*, from which it appears that Plaintiffs have extracted certain allegations contained in paragraph 146, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 146.

147.    Admitted in part; denied in part. UEP admits that Joanne Ivy is the CEO of the American Egg Board. To the extent that the allegations contained in paragraph 147

-42-

purport to characterize an article published in the April 2008 edition of *Egg Industry*, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 147, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 147.

148.    Denied.  To the extent that the allegations contained in paragraph 148 purport to characterize a white paper published by the American Egg Board, UEP denies Plaintiffs' characterization of the report, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 148.

149.    Denied.

150.    Denied.

151.    Admitted in part; denied in part.  UEP admits that an increase of supply may cause the prices of eggs to decrease.  To the extent that the allegations contained in paragraph 151 purport to characterize an article published in the June 2007 edition of *Egg Industry*, from which it appears that Plaintiffs have extracted certain allegations contained in paragraph 151, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 151.

152.    Denied.  To the extent that the allegations contained in paragraph 152 purport to characterize an article published in the June 2007 edition of *Egg Industry*, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 152, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 152.

153.    Denied.

154.     Denied.  To the extent that the allegations contained in paragraph 154 purport to characterize an article published in the *Wall Street Journal*, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.

155.     Denied.  To the extent that the allegations contained in paragraph 155 purport to characterize articles published in the February 2008 and October 2007 editions of *Egg Industry*, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 155, UEP denies Plaintiffs' characterization of the articles, which are writings that speak for themselves.  UEP denies the remaining allegations contained in paragraph 155.

156.     Denied.  To the extent that the allegations contained in paragraph 156 purport to characterize a *MarketWatch* article discussing egg prices, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 156, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 156.

157.     Admitted in part; denied in part.  UEP admits that Chad Gregory was the Senior Vice President of UEP.  To the extent that the allegations contained in paragraph 157 purport to characterize a *MarketWatch* article discussing egg prices, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 157, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 157.

158.     Denied.  To the extent that the allegations contained in paragraph 158 purport to characterize a USDA report, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 158, UEP denies Plaintiffs' characterization of the document,

which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 158.

159.    Denied.  To the extent that the allegations contained in paragraph 159 purport to characterize an article published in the *Chicago Tribune* dated March 30, 2008, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 159, UEP denies Plaintiffs' characterization of that article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 159.

160.    Denied.  To the extent that the allegations contained in paragraph 160 purport to characterize a written statement presented the Joint Economic Committee, U.S. Congress, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 160, UEP denies Plaintiffs' characterization of the testimony, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 160.

161.    Denied.  To the extent that the allegations contained in paragraph 161 purport to characterize a presentation given by USDA Secretary Ed Schaffer, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 161, UEP denies Plaintiffs' characterization of the transcript, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 161.

162.    Denied.  To the extent that the allegations contained in paragraph 162 purport to characterize an article published in the *Sacramento Bee* discussing egg prices, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 162, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 162.

163.     Denied.  By way of further response, UEP avers that it is a Capper-Volstead Agricultural Cooperative.

164.     Admitted in part; denied in part.  UEP admits that UEP was formed in 1968 as a Capper-Volstead Agricultural Cooperative.  To the extent that the allegations contained in paragraph 164 purport to characterize information posted on UEP's website, from which it appears that Plaintiffs have extracted certain allegations contained in paragraph 164, UEP denies Plaintiffs' characterization of the website, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 164.

165.     Admitted in part; denied in part.  UEP admits that UEP was created in 1968 as a Capper-Volstead Agricultural Cooperative comprised of five regional marketing cooperatives.  UEP further admits that in 1998, UEP amended its charter so that the regional cooperative members would be direct members of UEP.  UEP denies the remaining allegations contained in paragraph 165.

166.     Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter in October 2007, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 166.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 166.

167.     Admitted in part; denied in part.  UEP admits that it produces a *United Voices* newsletter that is available to UEP members, certain university representatives, certain domestic and international governmental entities, and trade press.  UEP denies the remaining allegations contained in paragraph 167.

168.     Denied.  UEP denies Plaintiffs' characterization of UEP.  To the extent that the allegations contained in paragraph 168 purport to characterize information posted on UEP's website, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 168, UEP denies Plaintiffs' characterization of the information on UEP's website, which is a writing that speaks for itself.  By way of further response, UEP, USEM and UEA are separately incorporated entities.  UEP denies the remaining allegations contained in paragraph 168.

169.     Denied.  To the extent that the allegations contained in paragraph 169 purport to characterize information posted on UEP's website, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 169, UEP denies Plaintiffs' characterization of the information on UEP's website, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 169.

170.     Admitted in part; denied in part.  UEP admits that UEA is a non-profit corporation organized and existing under the laws of the District of Columbia, and that UEA is comprised of three divisions:  UEA Further Processor Division, UEA Allied Industry Division, and UEA Producer/Packer Division.  To the extent that the remaining allegations contained in paragraph 170 purport to characterize information posted on UEP's website and contained in UEA's tax return, from which it appears that Plaintiffs have extracted certain allegations contained in paragraph 170, UEP denies Plaintiffs' characterization of those documents, which are writings that speak for themselves.  UEP denies the remaining allegations contained in paragraph 170.

171.     Admitted in part; denied in part.  UEP admits that USEM is a Capper-Volstead Agricultural Cooperative organized and existing under the laws of  the State of

-47-

Georgia, and that USEM negotiates shell egg export sales.  UEP denies that USEM is part of

UEP.  UEP denies the remaining allegations contained in paragraph 171.

172.    Admitted in part; denied in part.  UEP admits that Jerry Faulkner was the

president and general manager of UEP from December 1968 through January 1972.  UEP lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

contained in the first sentence of paragraph 172, and the same are therefore denied.  UEP further

admits that USEM is managed by UEP pursuant to a management agreement.  UEP denies the

remaining allegations contained in paragraph 172.

173.    Admitted.

174.    Admitted in part; denied in part.  UEP admits that Gene Gregory is the

former President and CEO of UEP.  To the extent that the allegations contained in paragraph 174

purport to characterize an article from UEP's *United Voices* newsletter, from which it appears

that Plaintiffs have extracted certain allegations contained in paragraph 174, UEP denies

Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for

itself.  UEP denies the remaining allegations contained in paragraph 174.

175.    Admitted in part; denied in part.  UEP admits that Don Bell is a poultry

specialist.  To the extent that the allegations contained in paragraph 175 purport to characterize a

report authored by Don Bell, from which it appears that Plaintiffs have extracted the allegations

contained in paragraph 175, UEP denies Plaintiffs' characterization of the report, which is a

writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 175.

176.    Admitted in part; denied in part.  UEP admits that UEP was originally

created as a Capper -Volstead Agricultural Cooperative comprised of five regional marketing

cooperatives.  UEP further admits that in 1998, UEP amended its charter so that the regional

cooperative members would be direct members of UEP.  UEP denies the remaining allegations contained in paragraph 176.

177.   Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter in August 1999, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 177.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 177.

178.   Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter in August 1999, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 178.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 178.

179.   Denied.  To the extent that the allegations contained in paragraph 179 purport to characterize an article from UEP's *United Voices* newsletter or an *Egg Industry* article dated November 1999, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 179, UEP denies Plaintiffs' characterization of the articles, which are writings that speak for themselves.  UEP denies the remaining allegations contained in paragraph 179.

180.   Denied.  To the extent that the allegations contained in paragraph 180 purport to characterize an *Egg Industry* article dated November 1999, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 180, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 180.

181.    Denied.  To the extent that the allegations contained in paragraph 181 purport to characterize a *Feedstuffs* article dated November 5, 2001, from which it appears that Plaintiffs have extracted certain allegations contained in paragraph 181, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 181.

182.    Admitted in part; denied in part.  UEP admits that Roger Deffner is affiliated with National Food Corporation; that Robert Krouse is affiliated with Midwest Poultry Services, L.P.; that Terry Baker is affiliated with Michael Foods, Inc.; and that Messrs. Deffner, Krouse, and Baker served on UEP's Board of Directors at certain times during the alleged relevant time period.  UEP further admits upon information and belief that John Mueller was Sparboe Farms, Inc.'s general counsel and that Mr. Mueller attended UEP meetings at certain times during the alleged relevant time period.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations about Mr. Mueller's recollection, and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 182.

183.    Admitted in part; denied in part.  UEP admits that the supply of shell eggs may have fluctuated in 2001.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations about the estimated size of the national flock, and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 183.

184.    Admitted in part; denied in part.  UEP admits that a documented titled "The Egg Industry" dated August 2001 was included in materials for a September 5, 2001 UEP meeting.  The allegations contained in paragraph 184 purport to characterize that document, from which it appears that Plaintiffs have extracted certain allegations contained in paragraph 184.

UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 184.

185.    Denied.  The allegations contained in paragraph 185 purport to characterize a document dated August 2001, from which it appears that Plaintiffs have extracted certain allegations contained in paragraph 185.  UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 185.

186.    Denied.  To the extent that the allegations contained in paragraph 186 purport to characterize a *Feedstuffs* article dated November 5, 2001, from which it appears that Plaintiffs have extracted certain allegations contained in paragraph 186, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 186.

187.    Admitted in part; denied in part.  UEP admits that Ken Looper was Vice Chairman of Cal-Maine Foods, Inc., in 2001.  To the extent that the remaining allegations contained in paragraph 187 purport to characterize a *Feedstuffs* article dated November 5, 2001, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 187, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 187.

188.    Denied.  To the extent that the allegations contained in paragraph 188 purport to characterize documents, UEP denies Plaintiffs' characterization of these documents, which are writings that speak for themselves.  UEP denies the remaining allegations contained in paragraph 188.

189.    Denied.  To the extent that the allegations contained in paragraph 189 purport to characterize a document, UEP denies Plaintiffs' characterization of that document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 189.

190.    Admitted in part; denied in part.  UEP admits that UEP's Board of Directors held a meeting on May 15-16, 2002 in Washington, D.C., and that the minutes from that meeting state that the individuals identified in paragraph 190 attended the meeting.  The remaining allegations contained in paragraph 190 purport to characterize the minutes from that meeting.  UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.

191.    Denied.  The allegations contained in paragraph 191 purport to characterize the minutes from a UEP Board of Directors meeting, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 191.  UEP denies Plaintiffs' characterization of that document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 191.

192.    Admitted in part; denied in part.  UEP admits that Dolph Baker was President of Cal-Maine Foods, Inc., in 2002.  To the extent that the allegations contained in paragraph 192 purport to characterize a *Feedstuffs* article dated November 5, 2001, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 192, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 192.

193.    Denied.

194.    Denied.

195.    Denied.

196.    Denied.

197.    Admitted in part; denied in part.  UEP admits that in 2000, UEP adopted animal husbandry guidelines based on the recommendations of the Scientific Advisory Committee for Animal Welfare.  By way of further response, UEP avers that it commissioned an independent Scientific Advisory Committee for Animal Welfare in 1999 to review scientific literature relevant to the well-being of egg-laying hens and to develop animal welfare recommendations based upon existing science.  The 2000 version of UEP's animal welfare guidelines recommended a cage space allowance from 67-86 square inches per hen to optimize bird welfare and proposed a phase-in schedule from 2002-2012 to implement the recommended stocking density of 67 inches per bird.  To the extent that the allegations contained in paragraph 197 purport to characterize a *Feedstuffs* article, UEP denies Plaintiffs' characterization of the article, which is writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 197.

198.    Denied.

199.    Denied.

200.    Admitted in part; denied in part.  UEP admits that in or around 2001, at the request of organizations that represent food retailers, wholesalers and restaurants, UEP modified the cage density phase-in period such that each hen would receive 67-76 square inches by 2008.  To the extent that the allegations contained in Paragraph 200 purport to characterize a *Feedstuffs* article, UEP denies Plaintiffs' characterization of the article, which is writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 200.

201.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations about Messrs. Mueller, Fortin, and Deffner, and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 201.

202.    Admitted in part; denied in part.  UEP admits that Garth Sparboe is a representative of Sparboe Farms, Inc., and that Mr. Sparboe attended meetings for UEP's Producer Committee for Animal Welfare at certain times during the alleged relevant time period.  UEP further admits that Tim Bebee is affiliated with Michael Foods, Inc.; that Gene Gregory was affiliated with UEP; that William R. Rehm is affiliated with Daybreak Foods, Inc.; that Robert Krouse is affiliated with Midwest Poultry Services, L.P.; and that each of these individuals attended meetings for UEP's Producer Committee for Animal Welfare at certain times during the alleged relevant time period.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations about Mr. Sparboe's knowledge or recollection, and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 202.

203.    Denied.

204.    Denied.  The allegations contained in the first sentence of paragraph 204 purport to characterize UEP's *United Voices* newsletter.  UEP denies Plaintiffs' characterization of the newsletter, which is a document that speaks for itself.  UEP denies the remaining allegations contained in paragraph 204.

205.    Denied.

206.    Admitted in part; denied in part.  UEP admits that Don Bell authored a document titled "Don Bell's Table Egg Layer Flock Projections and Economic Commentary – 2002" dated April 15, 2002.  The remaining allegations contained in paragraph 206 purport to

characterize that document, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 206.  UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 206.

207.    Admitted in part; denied in part.  UEP admits that Don Bell authored a document titled "Don Bell's Table Egg Layer Flock Projections and Economic Commentary – 2002" dated July 16, 2002.  The remaining allegations contained in paragraph 207 purport to characterize that document, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 207.  UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 207.

208.    Denied.  To the extent that the allegations contained in paragraph 208 purport to characterize a *Feedstuffs* article dated August 5, 2002, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 208, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 208.

209.    Denied.

210.    Denied.

211.    Admitted in part; denied in part.  UEP admits that UEP's Annual Board Meeting was held on October 11-12, 2002 in Savannah, Georgia, and that at that meeting, a motion passed that required producers who voluntarily chose to participate in the UEP animal welfare program to comply with UEP's animal welfare guidelines at all of the producer's production facilities.  UEP further admits that the minutes from that meeting state that the individuals identified in the second sentence of paragraph 211 were present at that meeting.  UEP denies the remaining allegations contained in paragraph 211.

212.     Denied.  To the extent that the allegations contained in paragraph 212 purport to characterize a document, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 212, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 212.

213.     Denied.

214.     Denied.

215.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 215, and the same are therefore denied.

216.     Admitted in part; denied in part.  UEP admits that a meeting was held in Las Vegas, Nevada, in or around February 2003 during which the requirement that producers who voluntarily chose to participate in the UEP animal welfare program implement UEP's animal welfare guidelines at all of their production facilities was discussed.   UEP further admits that the following individuals attended this meeting:  Paul Bahan, Ken Looper, Joe Fortin, Garth Sparboe, Bob Krouse, Jim Dean, Bill Goucher, and Gene Gregory.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations about Joe Fortin's conversations with Bob Sparboe, and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 216.

217.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations about John Mueller's state of mind, and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 217.

218.     Denied.

219.     Denied.

-56-

220.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 220, and the same are therefore denied. UEP denies the remaining allegations contained in paragraph 220.

221.    Denied.  To the extent that the allegations contained in paragraph 221 purport to characterize an article published in *Egg Industry* dated November 2002, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 221, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 221.

222.    Denied.

223.    Admitted in part; denied in part.  UEP admits that Food Marketing Institute ("FMI") is an organization that represents food retailers and wholesalers, and that UEP members and staff met with representatives of FMI to discuss industry-wide animal welfare guidelines and UEP's animal welfare program.  UEP denies the remaining allegations contained in paragraph 223.

224.    Denied.

225.    Admitted in part; denied in part.  UEP admits that Kroger, Co., and Wal-Mart Stores, Inc., purchased eggs certified under UEP's animal welfare program at certain times during the alleged relevant time period.  To the extent that the allegations contained in paragraph 225 purport to characterize an article published in *Feedstuffs* dated November 4, 2002, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 225, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 225.

226.     Denied.  To the extent that the allegations contained in paragraph 226 purport to characterize a document, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 226, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 226.

227.     Denied.

228.     Denied.

229.     Admitted in part; denied in part.  UEP admits that Gene Gregory authored an email to Greg Pearce of the Canadian Egg Marketing Agency dated June 20, 2005.   The remaining allegations contained in paragraph 229 purport to characterize that email, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 229.  UEP denies Plaintiffs' characterization of the email, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 229.

230.     Denied.  The allegations contained in paragraph 230 purport to characterize an email dated August 31, 2005, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 230.  UEP denies Plaintiffs' characterization of the email, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 230.

231.     Admitted in part; denied in part.  UEP admits that Bob Sparboe authored a letter to UEP Chairman Roger Deffner dated September 6, 2005.   The remaining allegations contained in paragraph 231 purport to characterize that letter, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 231.  UEP denies Plaintiffs'

characterization of the letter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 231.

232.     Admitted in part; denied in part.  UEP admits that Roger Deffner is affiliated with National Food Corporation, that Mr. Deffner served as UEP Chairman at certain times during the alleged relevant time period, and that Mr. Deffner and Al Pope appear to have signed a letter to Bob Sparboe dated September 12, 2005.   The remaining allegations contained in paragraph 232 purport to characterize that letter, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 232.  UEP denies Plaintiffs' characterization of the letter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 232.

233.     Admitted in part; denied in part.  UEP admits that Gene Gregory spoke with Wal-Mart representative Anthony Airoso regarding UEP's animal welfare guidelines and USDA's Process Verified Program in or around July 2008.  UEP denies the remaining allegations contained in paragraph 233.

234.     Admitted in part; denied in part.  UEP admits that Gene Gregory spoke with Wal-Mart representative Anthony Airoso regarding UEP's animal welfare guidelines and USDA's Process Verified Program in or around July 2008.  UEP denies the remaining allegations contained in paragraph 234.

235.     Admitted in part; denied in part.  UEP admits that in or around July 2008, Gene Gregory spoke with Wal-Mart representative Anthony Airoso regarding UEP's animal welfare guidelines, USDA's Process Verified Program, and Wal-Mart's decision to purchase shell eggs from non-UEP Certified producers.  UEP further admits that Mr. Gregory informed Mr. Airoso that Sparboe Farms, Inc., was no longer a UEP Certified member, and that Mr.

Gregory would send a letter to Wal-Mart.  UEP denies the remaining allegations contained in paragraph 235.

235. 236.    Denied.

237.    Admitted in part; denied in part.  UEP admits that it published a document titled "United Egg Producers Board Members & Committee Chairmen 2003 Directory."  The allegations contained in paragraph 237 purport to characterize this Directory, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 237.  UEP denies Plaintiffs' characterization of the Directory, which is a writing that speaks for itself.

238.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated May 1, 2003, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 238.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 238.

239.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated June 4, 2003, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 239.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 239.

240.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated June 4, 2003, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 240.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  To the extent that the allegations

contained in paragraph 240 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 240.

241.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated July 17, 2003, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 241.  UEP denies Plaintiffs' characterization of the newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 241.

242.    Admitted in part; denied in part.  UEP admits that UEP's animal welfare program had approximately 200 participants in or around 2003, and that the following were participants in UEP's animal welfare program in or around 2003:  Cal-Maine Foods, Inc.; Midwest Poultry Services, L.P.; Moark Productions, Inc.; National Food Corporation; R.W. Sauder, Inc.; Rose Acre Farms, Inc.; Sunrise Farms, LLC; Valley Fresh Foods, Inc.; J.S. West Milling Co., Inc.; and Gemperle Enterprises, Inc.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the layer numbers contained in paragraph 242, and the same are therefore denied.  By way of further response, UEP avers that the total number of layers attributed to participants in the UEP animal welfare program varies from month to month. UEP denies the remaining allegations contained in paragraph 242.

243.    Admitted in part; denied in part.  UEP admits that Gene Gregory authored a document titled "Reasons Why Industry Could Have Period of Profitability" in August 2003, and that this document was included in the meeting materials for an October 22, 2003 meeting of the UEP Shell Egg Marketing Committee and the UEP Price Discovery Committee.  The remaining allegations contained in paragraph 243 purport to characterize this document, from

which it appears that Plaintiffs have extracted the allegations contained in paragraph 243.  UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.

244.    Admitted in part; denied in part.  UEP admits that Gene Gregory authored a document titled "Reasons Why Industry Could Have Period of Profitability" in August 2003.  The allegations contained in paragraph 244 purport to characterize this document, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 244.  UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 244 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 244.

245.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated September 11, 2003, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 245.  UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 245.

246.    Admitted in part; denied in part.  UEP admits that Mike Bynum served as UEP's Chairman in 2003 and that UEP published a *United Voices* newsletter dated October 31, 2003, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 246.  UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 246.

247.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated December 30, 2003, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 247.  UEP denies Plaintiffs' characterization of the

document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 247.

248.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated December 30, 2003, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 248.  UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 248.

249.    Admitted in part; denied in part.  UEP admits that UEP's Shell Egg Marketing Committee held a meeting on or about January 26, 2004, in Atlanta, Georgia.  UEP further admits that that Dolph Baker of Cal-Maine Foods, Inc.; Joe Fortin, formerly of Moark, LLC, and its subsidiary Kofkoff Egg Farm; Bob Krouse of Midwest Poultry Services, L.P.; Arnie Reibli; Gary Bethel of Hillandale-Gettysburg L.P.; Ken Looper of Cal-Maine Foods, Inc.; Mark Oldenkamp; Roger Deffner of National Foods Corporation; Chuck Elste of NuCal Foods, Inc.; and Paul Osborn of Moark, LLC and its subsidiary Moark Productions, Inc. were members of the Shell Egg Marketing Committee in 2004.  UEP denies the remaining allegations contained in paragraph 249.

250.    Admitted in part; denied in part.  UEP admits that a document titled "Supply Demand Comments" dated January 16, 2004, and attributed to Ken Looper, was included in the meeting materials for a January 26, 2004 meeting of the Shell Egg Marketing Committee.  The remaining allegations contained in paragraph 250 purport to characterize this document, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 250.  UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.

251.    Admitted in part; denied in part.  UEP admits that Gene Gregory presented a document authored by Don Bell titled "Supply/Demand Challenges (When Will We Ever Learn?)" at the January 26, 2004 meeting of UEP's Shell Egg Marketing Committee.  The remaining allegations contained in paragraph 251 purport to characterize that document, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 251.  UEP denies Plaintiffs' characterization of that document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 251.

252.    Admitted in part; denied in part.  UEP admits that flock numbers and egg prices varied during the alleged relevant time period.  UEP denies the remaining allegations contained in paragraph 252.

253.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated March 4, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 253.  UEP denies Plaintiffs' characterization of the newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 253.

254.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated April 8, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 254.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 254.

255.    Denied. To the extent that the allegations contained in paragraph 255 constitute conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 255.

256.     Admitted in part; denied in part.  UEP admits that Gene Gregory authored an email dated May 6, 2004, and that the individuals identified in the first sentence of paragraph 256 are listed as recipients.  The remaining allegations contained in paragraph 256 purport to characterize that email, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 256.  UEP denies Plaintiffs' characterization of the email, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 256.

257.     Admitted in part; denied in part.  UEP admits that UEP's Marketing Committee held a meeting on May 10, 2004, in Washington, D.C.  UEP further admits that the minutes from that meeting state that Dolph Baker, an individual affiliated with Cal-Maine Foods, Inc.; Mark Oldenkamp; and Roger Deffner, an individual affiliated with National Food Corporation, were present at that meeting.  UEP denies the remaining allegations contained in paragraph 257.

258.     Admitted in part; denied in part.  UEP admits that Gene Gregory gave a presentation at the May 10, 2004, UEP Marketing Committee meeting.  The remaining allegations contained in paragraph 258 purport to characterize a document titled "Market Analysis (Now & Future)," from which it appears that Plaintiffs have extracted the allegations contained in paragraph 258.  UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 258.

259.     Denied.  To the extent that the allegations contained in paragraph 259 purport to characterize a document titled "Market Analysis (Now & Future)," from which it appears that Plaintiffs have extracted the allegations contained in paragraph 259, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 259.

260.     Denied.  To the extent that the allegations contained in paragraph 260 purport to characterize a document titled "Market Analysis (Now & Future)," from which it appears that Plaintiffs have extracted the allegations contained in paragraph 260, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 260.

261.     Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated May 20, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 261.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 261 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 261.

262.     Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated May 20, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 262.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 262 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 262.

263.     Admitted in part; denied in part.  UEP admits that Roger Deffner is affiliated with National Food Corporation, that Mr. Deffner served as UEP Chairman in 2004, and that UEP published a *United Voices* newsletter dated May 20, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 263.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 263 are conclusions of law, no response is

required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 263.

264.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated May 20, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 264.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 264 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 264.

265.    Denied.  To the extent that the allegations contained in paragraph 265 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 265.

266.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated July 16, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 266.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 266 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 266.

267.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated September 15, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 267.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  To the extent that the allegations

contained in paragraph 267 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 267.

268.    Denied.

269.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated October 28, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 269.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 269.

270.    Denied.  To the extent that the allegations contained in paragraph 270 purport to characterize a document, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 270, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 270 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 270.

271.    Denied.  To the extent that the allegations contained in paragraph 271 purport to characterize an article published in *Feedstuffs* dated November 1, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 271, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 271.

272.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated November 11, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 272.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  To the extent that the allegations

contained in paragraph 272 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 272.

273.    Admitted in part; denied in part.  UEP admits that UEP held an "Economic Summit" meeting on November 16, 2004, in Atlanta, Georgia.  To the extent that the allegations contained in paragraph 273 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 273.

274.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated November 23, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 274.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 274 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 274.

275.    Denied.  To the extent that the allegations contained in paragraph 275 purport to characterize a document, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 275, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 275 are conclusions of law, no response is required and they are deemed denied.  UEP denies the remaining allegations contained in paragraph 275.

276.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated November 23, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 276.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  To the extent that the allegations

contained in paragraph 276 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 276.

277.    Admitted in part; denied in part.  UEP admits that UEP authored and sent a letter to certain UEP members dated December 3, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 277.  UEP denies Plaintiffs' characterization of the letter, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 277 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 277.

278.    Admitted in part; denied in part.  UEP admits that UEP authored a letter with attachments dated December 3, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 278.  UEP denies Plaintiffs' characterization of the documents, which are writings that speak for themselves.  To the extent that the allegations contained in paragraph 278 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 278.

279.    Admitted in part; denied in part.  UEP admits that it sent Bob Sparboe, of Sparboe Companies, a letter dated December 3, 2004.  To the extent that the allegations contained in paragraph 279 are conclusions of law, no response is required, and they are thus deemed denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 279, and the same are therefore denied.  To the extent that the allegations contained in paragraph 279 purport to characterize a document, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 279, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 279.

280.     Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated December 10, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 280.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 280 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 280.

281.     Denied.

282.     Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated December 20, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 282.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 282.

283.     Admitted in part; denied in part.  UEP admits that the UEP Board of Directors held a meeting on January 25, 2005, in Atlanta, Georgia.  The remaining allegations purport to characterize the minutes from this meeting.  UEP denies Plaintiffs' characterization of the meeting minutes, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 283 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 283.

284.     Admitted in part; denied in part.  UEP admits that the UEP Board of Directors held a meeting on January 25, 2005, in Atlanta, Georgia, and that Roger Deffner of National Food Corporation was UEP's Chairman at certain times in 2005.  The remaining allegations purport to characterize the minutes from the January 25, 2005 meeting.  UEP denies

Plaintiffs' characterization of the meeting minutes, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 284.

285.    Admitted in part; denied in part.  UEP admits that the UEP Board of Directors held a meeting on January 25, 2005, in Atlanta, Georgia, and that that minutes from that meeting state that Wayne Mooney of Pilgrim's Pride presented a Marketing Committee Report.  The remaining allegations purport to characterize the minutes from this meeting.  UEP denies Plaintiffs' characterization of the meeting minutes, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 285.

286.    Denied.  To the extent that the allegations contained in paragraph 286 refer to documents, UEP denies Plaintiffs' characterization of these documents, which are writings that speak for themselves.  To the extent that the allegations contained in paragraph 286 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 286.

287.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated February 3, 2005, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 287.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 287 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 287.

288.    Denied.

289.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated August 12, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 289.  UEP denies Plaintiffs' characterization of the *United*

*Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 289.

290.    Denied.  To the extent that the allegations contained in paragraph 290 purport to characterize an article published in *Feedstuffs* dated November 15, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 290, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 290.

291.    Admitted in part; denied in part.  UEP admits that UEP's Board of Directors held a meeting by telephone conference on December 16, 2004, and that the minutes from that meeting state that the individuals identified in the first sentence of paragraph 291 attended the meeting.  The remaining allegations purport to characterize the minutes from this meeting, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 291.  UEP denies Plaintiffs' characterization of the meeting minutes, which is a writing that speaks for itself.

292.    Denied.

293.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated March 3, 2005, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 293.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 293.

294.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated April 14, 2005, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 294.  UEP denies Plaintiffs' characterization of the *United*

*Voices* newsletter, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 294.

295. Admitted in part; denied in part. UEP admits that UEP's Producer Committee for Animal Welfare held a meeting on April 19, 2005, in Chicago, Illinois, and that the minutes from that meeting state that the individuals identified in the first sentence of paragraph 295 attended the meeting. The remaining allegations purport to characterize the minutes from this meeting, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 295. UEP denies Plaintiffs' characterization of the meeting minutes, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 295.

296. Denied. The allegations contained in paragraph 296 purport to characterize the minutes from UEP's April 19, 2005 Producer Committee for Animal Welfare, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 296. UEP denies Plaintiffs' characterization of the meeting minutes, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 296.

297. Denied. To the extent that the allegations contained in paragraph 297 purport to characterize the minutes from UEP's April 19, 2005 Producer Committee for Animal Welfare, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 297, UEP denies Plaintiffs' characterization of the meeting minutes, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 297.

298. Admitted in part; denied in part. UEP admits that UEP published a *United Voices* newsletter dated May 2, 2005, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 298. UEP denies Plaintiffs' characterization of the newsletter,

which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 298 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 298.

299.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated May 12, 2005, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 299.  UEP denies Plaintiffs' characterization of the newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 299.

300.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated May 12, 2005, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 300.  UEP denies Plaintiffs' characterization of the newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 300.

301.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated May 26, 2005, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 301.  UEP denies Plaintiffs' characterization of the newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 301.

302.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated June 9, 2005, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 302.  UEP denies Plaintiffs' characterization of the newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 302.

303.    Denied.  To the extent that the allegations contained in paragraph 303 purport to characterize a Cal-Maine Foods, Inc., press release dated August 1, 2005, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 303, UEP denies Plaintiffs' characterization of the press release, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 303.

304.    Admitted in part; denied in part.  UEP admits that UEP's Annual Membership Meeting was held on October 6, 2005, in Seattle, Washington.  UEP further admits that Dolph Baker of Cal-Maine Foods, Inc., was elected as UEP Chairman; that Gary West was elected as UEP First Vice Chairman; that Bob Krouse of Midwest Poultry Services, L.P., was elected as UEP Second Vice Chairman; that Joe Fortin, formerly of Moark, LLC and its subsidiary Kofkoff Egg Farm, was elected as UEP Treasurer; and that Steve Gemperle was elected to the UEP Board of Directors.  UEP denies the remaining allegations contained in paragraph 304.

305.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated November 28, 2005, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 305.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 305.

306.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated November 28, 2005, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 306.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 306.

307.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated January 11, 2006, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 307.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 307.

308.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated February 15, 2006, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 308.  UEP denies Plaintiffs' characterization of the newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 308.

309.    Admitted in part; denied in part.  UEP admits that UEP it published an article titled "Supply/Demand Alert" in its April 13, 2006 edition of *United Voices*.  UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 309.

310.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated May 24, 2006, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 310.  UEP denies Plaintiffs' characterization of the newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 310.

311.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated August 3, 2006, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 311.  UEP denies Plaintiffs' characterization of the newsletter,

which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 311.

312.   Denied.  To the extent that the allegations contained in paragraph 312 purport to characterize an article published in *Egg Industry's* May 2007 issue, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 312, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 312 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 312.

313.   Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated February 28, 2008, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 313.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 313.

314.   Admitted in part; denied in part.  UEP admits that the minutes from certain meetings of UEP's Producer Committee for Animal Welfare indicate that representatives from Sparboe Farms, Inc., were in attendance at some of those meetings.  To the extent that the allegations contained in paragraph 314 purport to characterize an unidentified document, from which it appears that Plaintiffs have derived some of the allegations made in paragraph 314, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 314.

315.   Denied.  The allegations contained in paragraph 315 purport to characterize UEP's *United Voices* newsletter dated February 26, 2003, from which it appears that

Plaintiffs have extracted the allegations contained in paragraph 315.  UEP denies Plaintiffs'

characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP

denies the remaining allegations contained in paragraph 315.

      316.    Denied.  To the extent that the allegations contained in paragraph 316 are

conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the

remaining allegations contained in paragraph 316.

      317.    Denied.  To the extent that the allegations contained in paragraph 317 are

conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the

remaining allegations contained in paragraph 317.

      318.    Admitted in part; denied in part.  UEP admits that UEP published a *United

Voices* newsletter dated October 15, 2001, from which it appears that Plaintiffs have extracted

the allegations contained in paragraph 318.  UEP denies Plaintiffs' characterization of the *United

Voices* newsletter, which is a writing that speaks for itself.  UEP further admits that exports may

affect the domestic U.S. egg industry.  To the extent that the allegations contained in paragraph

319 are conclusions of law, no response is required, and they are thus deemed denied.  UEP

denies the remaining allegations contained in paragraph 318.

      319.    Admitted in part; denied in part.  UEP admits that Dolph Baker is the

President of Cal-Maine Foods, Inc.; that Chad Gregory was the Senior Vice President of UEP;

that Joseph Fortin was affiliated with Moark, LLC and its subsidiary Kofkoff Egg Farm; and that

these individuals supported egg exports at certain times during the alleged relevant time period.

To the extent that the allegations contained in paragraph 319 are conclusions of law, no response

is required, and they are thus deemed denied.  UEP lacks knowledge or information sufficient to

form a belief as to the truth of the remaining allegations contained in paragraph 319, and the same are therefore denied.

320.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 320, and the same are therefore denied. To the extent that the allegations contained in paragraph 320 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 320.

321.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 321, and the same are therefore denied.

322.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 322, and the same are therefore denied. The allegations contained in paragraph 322 purport to characterize a March 20, 2003 document, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 322. UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 322.

323.    Admitted in part; denied in part.  UEP admits that the UEP Board of Directors Legislative Meeting was held on May 12-15, 2003, and that the minutes from this meeting state that the effect of exports on the market was discussed.  UEP denies the remaining allegations contained in paragraph 323.

324.    Admitted in part; denied in part.  UEP admits that the UEP Board of Directors Legislative Meeting was held on May 12-15, 2003, in Washington, D.C., and that the minutes from this meeting state that the individuals identified in the second sentence in

paragraph 324 attended that meeting.  UEP denies the remaining allegations contained in paragraph 324.

325.    Denied.  The allegations contained in paragraph 325 purport to characterize the minutes from UEP's May 12-15, 2003 UEP Board of Directors Legislative Meeting, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 325.  UEP denies Plaintiffs' characterization of the meeting minutes, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 325.

326.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated October 28, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 326.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 326.

327.    Denied.  The allegations contained in paragraph 327 purport to characterize UEP's October 28, 2004 *United Voices* newsletter, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 327.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 327.

328.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 328, and the same are therefore denied.  The remaining allegations contained in paragraph 328 purport to characterize a letter authored by Gene Gregory dated June 21, 2005, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 328.  UEP denies Plaintiffs' characterization of that letter, which is a writing that speaks for itself.  To the extent that the

allegations contained in paragraph 328 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 328.

329.   Admitted in part; denied in part.  UEP admits that both Al Pope and Gene Gregory served as President of UEP at certain times during the alleged relevant time period, and that Joseph Fortin was affiliated with Moark, LLC and its subsidiary Kofkoff Egg Farm.  To the extent that the allegations contained in paragraph 329 purport to characterize a document, from which it appears that Plaintiffs have extracted certain allegations contained in paragraph 329, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the last two sentences of paragraph 329, and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 329.

330.   Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated October 17, 2005, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 330.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 330.

331.   Denied.

332.   Denied.  To the extent that the allegations contained in paragraph 332 purport to characterize an article published in the *Wall Street Journal* dated September 23, 2008, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 332, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 332.

333.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 333, and the same are therefore denied.

334.    Denied.  To the extent that the allegations contained in paragraph 334 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 334.

335.    Denied.  To the extent that the allegations contained in paragraph 335 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 335.

336.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated November 1, 2006, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 336.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 336.

337.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 337, and the same are therefore denied.

338.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated January 4, 2007, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 338.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 338 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 338.

339.    Admitted in part; denied in part.  UEP admits that a container of eggs may hold between 750-850 cases of eggs, depending on weight.  To the extent that the allegations

contained in paragraph 339 purport to characterize a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 339, and the same are therefore denied.

340.    Denied.  To the extent that the allegations contained in paragraph 340 purport to characterize an article published in *Egg Industry's* May 2007 issue, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 340, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 340.

341.    Admitted in part; denied in part.  UEP admits that the UEP Marketing Committee held a meeting on May 14, 2007, in Washington, D.C., and that the minutes from this meeting state that the individuals identified in the second and third sentences of paragraph 341 attended that meeting.  The remaining allegations contained in paragraph 341 purport to characterize the minutes from the May 17, 2007 Marketing Committee meeting, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 341.  UEP denies Plaintiffs' characterization of the meeting minutes, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 341.

342.    Denied.  The allegations contained in paragraph 342 purport to characterize a USDA article published in the *International Egg and Poultry Review* dated June 12, 2007.  UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 342.

343.    Denied.  The allegations contained in paragraph 343 purport to characterize a USDA article published in the *International Egg and Poultry Review* dated

June 12, 2007, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 343.  UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 343.

344.    Denied.  The allegations contained in paragraph 344 purport to characterize an article published in *Egg Industry's* May 2007 issue.  UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 344.

345.    Denied.  The allegations contained in paragraph 345 purport to characterize an article published in Egg Industry's May 2007 issue, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 345.  UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 345.

346.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated August 17, 2007.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 346.

347.    Denied.  The allegations contained in paragraph 347 purport to characterize an article published in *Egg Industry's* September 2007 issue, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 347.  UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 347.

348.    Denied.  To the extent that the allegations contained in paragraph 348 allege specific facts about egg production and demand in the European Union, or the mental state

or activities of the European Commission, UEP lacks knowledge or information sufficient to form a belief as to the truth or falsity of those allegations, and the same are therefore denied. UEP denies the remaining allegations contained in paragraph 348.

349.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 349, and the same are therefore denied. To the extent that the allegations contained in paragraph 349 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 349.

350.    Denied.  The allegations contained in paragraph 350 purport to characterize an article published in the June 2007 issue of *Egg Industry*, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 350.  UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 350.

351.    Denied.  The allegations contained in paragraph 351 purport to characterize a Food Institute Report dated July 2, 2007, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 351.  UEP denies Plaintiffs' characterization of the report, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 351.

352.    Denied.  The allegations contained in paragraph 352 purport to characterize an article published in Egg Industry's May 2007 issue, and the contents of a United States Poultry & Egg Association publication.  UEP denies Plaintiffs' characterization of the documents, which are writings that speak for themselves.  UEP denies the remaining allegations contained in paragraph 352.

353.   Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated January 3, 2008, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 353.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 353.

354.   Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated July 15, 2008, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 354.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 354.

355.   Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated November 12, 2003, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 355.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 355.

356.   Denied.  To the extent that the allegations contained in 356 purport to characterize a *Feedstuffs* article dated November 2003, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 356, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 356.

357.   Admitted in part; denied in part.  UEP admits that Gene Gregory is the former President and CEO of UEP.  To the extent that the allegations contained in 357 purport to characterize a *Pittsburgh-Post Gazette* article dated December 13, 2003, from which it appears

that Plaintiffs have extracted the allegations contained in paragraph 357, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 357.

358.    Denied.  To the extent that the allegations contained in paragraph 358 purport to characterize a *Columbia State* article dated December 13, 2003, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 358, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 358.

359.    Denied.  To the extent that the allegations contained in paragraph 359 purport to characterize a *Lancaster New Era* article dated December 15, 2003, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 359, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 359.

360.    Denied.  To the extent that the allegations contained in paragraph 360 purport to characterize a report authored by Don Bell dated March 1, 2004, from which it appears that Plaintiffs have extracted certain allegations contained in paragraph 360, UEP denies Plaintiffs' characterization of the report, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 360 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 360.

361.    Denied.

362.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated February 2, 2007, from which it appears that Plaintiffs have extracted the

allegations contained in paragraph 362.  UEP denies Plaintiffs' characterization of the newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 362.

363.    Denied.  The allegations contained in paragraph 363 purport to characterize an article published in the *Columbus Dispatch* dated February 13, 2007, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 363.  UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 363.

364.    Admitted in part; denied in part.  UEP admits that Bill Rehm is the President of Daybreak Foods, Inc.  To the extent that the allegations contained in paragraph 364 purport to characterize an article published in *Egg Industry* dated March 2007, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 364, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 364.

365.    Denied.  To the extent that the allegations contained in paragraph 365 purport to characterize an article published in *Egg Industry* dated March 2007, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 365, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 365.

366.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated April 10, 2007, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 366.  UEP denies Plaintiffs' characterization of the newsletter,

which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 366.

367.    Denied.  The allegations contained in paragraph 367 purport to characterize a document, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 367.  UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 367.

368.    Admitted in part; denied in part.  UEP admits that the UEP Marketing Committee held a meeting on May 14, 2007, in Washington, D.C., and that the minutes from this meeting state that the individuals identified in the second and third sentences of paragraph 368 attended the meeting.  The remaining allegations contained in paragraph 368 purport to characterize the minutes from the May 17, 2007 Marketing Committee meeting, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 368.  UEP denies Plaintiffs' characterization of the meeting minutes, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 368.

369.    Denied.  To the extent that the allegations contained in paragraph 369 purport to characterize an article published in *Investor's Business Daily* dated July 10, 2007, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 369, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 369.

370.    Denied.  To the extent that the allegations contained in paragraph 370 purport to characterize an article published in *Egg Industry* dated September 2007, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 370, UEP denies

Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 370.

371.    Admitted in part; denied in part.  UEP admits that Mark Oldenkamp is Vice President of northwest operations for Valley Fresh Foods, Inc.  To the extent that the allegations contained in paragraph 371 purport to characterize an article published in *Egg Industry* dated October 2007, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 371.

372.    Admitted in part; denied in part.  UEP admits that Paul Sauder is the President of R. W. Sauder, Inc., and that R. W. Sauder, Inc.'s principal place of business is located in Lititz, Pennsylvania.  To the extent that allegations contained in paragraph 372 purport to characterize an article published in *Egg Industry* dated October 2007, from which it appears that Plaintiffs have extracted certain allegations contained in paragraph 372, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 372.

373.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 373, and the same are therefore denied.  To the extent that the allegations contained in paragraph 373 purport to characterize an article published in *Egg Industry* dated November 2007, from which it appears that Plaintiffs have extracted certain allegations contained in paragraph 373, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 373.

374.    Admitted in part; denied in part.  UEP admits that Craig Willardson is the President and CEO of Moark, LLC.  To the extent that the allegations contained in paragraph

375 purport to characterize an article published in *Egg Industry* dated November 2007, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 374, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 374.

375.    Denied.  To the extent that the allegations contained in paragraph 375 purport to characterize an article published in *Feedstuffs* dated November 5, 2007, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 375, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 375.

376.    Denied.  To the extent that  allegations contained in paragraph 376 purport to characterize an article published in the *Star Tribune* dated December 8, 2008, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 376, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 376.

377.    Denied.  To the extent that the allegations contained in paragraph 377 purport to characterize an article published in *Egg Industry* dated January 2008, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 377, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 377.

378.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated January 3, 2008, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 378.  UEP denies Plaintiffs' characterization of the newsletter,

which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 378.

379.   Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated January 31, 2008, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 379.  UEP denies Plaintiffs' characterization of the newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 379.

380.   Admitted in part; denied in part.  UEP admits that Dolph Baker is the President of Cal-Maine Foods, Inc.  To the extent that the allegations contained in paragraph 380 purport to characterize an article published in *Egg Industry* dated February 2008, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 380, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 380.

381.   Denied.  To the extent that the allegations contained in paragraph 381 purport to characterize an article published in *Egg Industry* dated February 2008, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 381, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 381.

382.   Admitted in part; denied in part.  UEP admits that Fred Adams, Jr., is affiliated with Cal-Maine Foods, Inc.  To the extent that the allegations contained in paragraph 382 purport to characterize an article posted on Sunny Hill Eggs' website titled "Christine's Egg Diary" dated February 3, 2008, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 382, UEP denies Plaintiffs' characterization of the article,

which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 382.

383.    Admitted in part; denied in part.  UEP admits that Chad Gregory was the Senior Vice-President of UEP.  To the extent that the allegations contained in paragraph 383 purport to characterize an article published in the Daily Breeze dated March 31, 2008, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 383, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 383.

384.    Denied.  To the extent that the allegations contained in paragraph 384 purport to characterize an article published in the *Chicago Tribune* dated March 23, 2008, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 384, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 384.

385.    Denied.  To the extent that the allegations contained in paragraph 385 purport to characterize an article published in *Egg Industry* dated May 2008, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 385, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 385.

386.    Admitted in part; denied in part.  UEP admits that the UEP Marketing Committee held a meeting on May 12, 2008, in Washington, D.C.; that Roger Deffner of National Foods Corporation was the Chairman of the UEP Marketing Committee in 2008; and that the minutes from this meeting state that the individuals identified in the first sentence of paragraph 386 attended that meeting.  The remaining allegations contained in paragraph 386

purport to characterize the minutes from the May 12, 2008 Marketing Committee meeting, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 386.  UEP denies Plaintiffs' characterization of the meeting minutes, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 386.

387.    Admitted in part; denied in part.  UEP admits that Roger Deffner is affiliated with National Food Corporation, and that Mr. Deffner was the Chairman of UEP's Shell Egg Marketing Committee at certain times during the alleged relevant time period.  UEP further admits that UEP published an article authored by Mr. Deffner in its June 19, 2008 edition of *United Voices*, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 387.  UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 387.

388.    Admitted in part; denied in part.  UEP admits that Gene Gregory is the former President of UEP.  To the extent that the allegations contained in paragraph 388 purport to characterize an article published in *Egg Industry* dated June 2008, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 388, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 388.

389.    Admitted in part; denied in part.  UEP admits that Fred Adams, Jr., is the founder and Chairman of Cal-Maine Foods, Inc.  To the extent that the allegations contained in paragraph 389 purport to characterize a transcription of a June 4, 2008 presentation, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 389, UEP denies Plaintiffs' characterization of the transcribed presentation, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 389.

390.    Denied.  To the extent that the allegations contained in paragraph 390 purport to characterize a transcription of an August 12, 2008 Earnings Conference Call with Michael Foods, Inc., from which it appears that Plaintiffs have extracted the allegations contained in paragraph 390, UEP denies Plaintiffs' characterization of the transcribed discussion, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 390.

391.    Denied.  To the extent that the allegations contained in paragraph 391 purport to characterize an August 12, 2008 Earnings Conference Call with Michael Foods, Inc., from which it appears that Plaintiffs have extracted the allegations contained in paragraph 391, UEP denies Plaintiffs' characterization of the transcribed discussion, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 391.

392.    Admitted in part; denied in part.  UEP admits that the UEP Marketing Committee held a meeting on May 12, 2008, in Washington, D.C., and that Roger Deffner of National Foods Corporation was the Chairman of the UEP Marketing Committee in 2008.  The remaining allegations contained in paragraph 392 purport to characterize the minutes from that meeting, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 392.  UEP denies Plaintiffs' characterization of the meeting minutes, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 392.

393.    Denied.  To the extent that the allegations contained in paragraph 393 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 393.

394.    Admitted in part; denied in part.  UEP admits that shell eggs may be broken and processed into various dried, liquid and frozen egg products.  UEP denies the remaining allegations contained in paragraph 394.

395.    Denied.

396.    Admitted in part; denied in part.  UEP admits that that certain egg farmers perform more than one step in the process of bringing an egg to market and that certain UEP member farmers process eggs and/or raise egg laying hens.  To the extent that the remaining averments of paragraph 396 constitute conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 396.

397.    Admitted in part; denied in part.  UEP admits that certain UEP member farmers purchase shell eggs for processing, and that Plaintiffs, who do not purport to be members of a class action, purport to exclude such purchases from some alleged class.  To the extent that the allegations contained in paragraph 397 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 397.

398.    Admitted in part; denied in part.  UEP admits that UEA's Further Processor Division is comprised of companies that process eggs into egg products and/or provide equipment or services to the processing industry.  UEP denies the remaining allegations contained in paragraph 398.

399.    Admitted in part; denied in part.  UEP admits that meetings for UEA and UEP sometimes occur at similar times and in similar locations; that UEA members sometimes attend certain UEP meetings; that UEP members sometimes attend certain UEA meetings; and that certain producers are members of both UEA and UEP.  To the extent that the allegations

contained in paragraph 399 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 399.

400.    Admitted in part; denied in part.  UEP admits that certain UEP members produce and process eggs.  UEP denies the remaining allegations contained in paragraph 400.

401.    Denied.  The allegations contained in paragraph 401 purport to characterize UEP's *United Voices* newsletter dated May 20, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 401.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 401 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 401.

402.    Denied.  The allegations contained in paragraph 402 purport to characterize UEP's *United Voices* newsletter dated June 22, 2006, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 402.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 402.

403.    Denied.  The allegations contained in paragraph 403 purport to characterize UEP's *United Voices* newsletter dated November 1, 2006, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 403.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 403.

404.    Denied.  The allegations contained in paragraph 404 purport to characterize an article published in *Egg Industry's* January 2008 issue, from which it appears that

Plaintiffs have extracted the allegations contained in paragraph 404.  UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 404.

      405.    Denied.

      406.    Denied.  The allegations contained in paragraph 406 purport to characterize material published on UEP's website.  UEP denies Plaintiffs' characterization of the contents of its website, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 406.

      407.    Denied.  The allegations contained in paragraph 407 purport to characterize a written statement provided to the U.S. House of Representatives, Committee on Agriculture, Subcommittee on Livestock, Dairy, and Poultry by Gene Gregory.  UEP denies Plaintiffs' characterization of the contents of the statement, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 407.

      408.    Denied.

      409.    Admitted in part; denied in part.  UEP admits that UEP commissioned an independent Scientific Advisory Committee for Animal Welfare to review scientific literature relevant to the well-being of egg-laying hens and to develop animal welfare recommendations based upon existing science; and that UEP accepted most of the recommendations of the Scientific Advisory Committee for Animal Welfare.  To the extent that the remaining allegations contained in paragraph 409 purport to characterize the written testimony of Gail C. Golab before the U.S. House of Representatives, Committee on Agriculture, Subcommittee on Livestock, Dairy, and Poultry, UEP denies Plaintiffs' characterization of the contents of the statement,

which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 409.

409.   Denied.  The allegations contained in paragraph 410 purport to characterize a report authored by J.A. Mench and J.A. Swanson, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 410.  UEP denies Plaintiffs' characterization of the contents of the report, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 410.

411.   Denied.  UEP states that the allegations contained in paragraph 411 improperly mix unattributed and incomplete quoted statements with improper characterization of those statements.  UEP further states that the allegations contained in paragraph 411 purport to characterize a Food Marketing Institute Press Release dated June 27, 2002, and UEP's July 2, 2003 edition of its *United Voices* newsletter.  UEP denies Plaintiffs' characterization of these documents, which are writings that speak for themselves.  UEP denies the remaining allegations contained in paragraph 411.

412.   Admitted in part; denied in part.  UEP admits that Compassion Over Killing filed a complaint with the Federal Trade Commission regarding UEP's "Animal Care Certified" logo.  UEP further admits that on September 30, 2005, the Federal Trade Commission agreed to dismiss that complaint following UEP's voluntary decision to change the logo placed on egg cartons for eggs produced according to UEP's animal husbandry guidelines from "Animal Care Certified" to "United Egg Producers Certified."  UEP denies the remaining allegations contained in paragraph 412.

413.   Admitted in part; denied in part.  UEP admits that on or about August and September 2006, UEP voluntarily agreed to settle claims with various states and the District of

Columbia regarding UEP's "Animal Care Certified" logo for $100,000. To the extent that the allegations contained in paragraph 414 purport to characterize a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 413.

414. Denied.

415. Denied.

416. Denied. To the extent that the allegations contained in paragraph 416 purport to characterize UEP's animal welfare audit guidelines, UEP denies Plaintiffs' characterization of the audit guidelines, which are contained in a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 416.

417. Denied. To the extent that the allegations contained in paragraph 417 purport to characterize UEP's animal welfare audit guidelines, UEP denies Plaintiffs' characterization of the audit guidelines, which are contained in a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 417.

418. Denied. To the extent that the allegations contained in paragraph 418 are conclusions of law, no response is required, and they are thus deemed denied. To the extent the allegations contained in paragraph 418 purport to characterize information posted on UEP's website, from which it appears that Plaintiffs have extracted certain allegations contained in paragraph 418, UEP denies Plaintiffs' characterization of the information on the website, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 418.

419. Denied. To the extent that the allegations contained in paragraph 419 purport to characterize UEP's Membership Agreement, from which it appears that Plaintiffs have

extracted certain allegations contained in paragraph 419, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 419.

420.    Admitted in part; denied in part.  UEP admits that Anderson Pullets, Inc., was a UEP member at certain times during the alleged relevant time period; and that an individual affiliated with Anderson Pullets, Inc., served on UEP's Board of Directors at certain times during the alleged relevant time period.  UEP further admits that Anderson Pullets, Inc., raises pullets.   UEP denies the remaining allegations contained in paragraph 420.

421.    Admitted in part; denied in part.  UEP admits that meetings for UEA and UEP sometimes occur at similar times and in similar locations; that UEA members sometimes attend certain UEP meetings; that UEP members sometimes attend certain UEA meetings; and that certain producers are members of both UEA and UEP.  UEP denies the remaining allegations contained in paragraph 421.

422.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter in April 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 422.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 422.

423.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter in May 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 423.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 423.

424.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 424, and the same are therefore denied.

425.    Admitted in part; denied in part.  UEP admits that Michael Foods, Inc., and Moark, LLC, were UEP members at certain times during the alleged relevant time period; and that individuals affiliated with Michael Foods, Inc., and Moark, LLC and its subsidiaries, served on UEP's Board of Directors and various UEP committees at certain times during the alleged relevant time period.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 425, and the same are therefore denied.

426.    Admitted in part; denied in part.  UEP admits that at certain times during the alleged relevant time period, Rose Acres Farms, Inc., was a UEP member; and that an individual affiliated with Rose Acre Farms, Inc., served on the UEP Board of Directors and various UEP committees at certain times during the alleged relevant time period.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 426, and the same are therefore denied.

427.    Admitted in part; denied in part.  UEP admits that Fred Adams, Jr., is the Chairman of the Board of Directors of Cal-Maine Foods, Inc., and that Mr. Adams served as a member of UEP's Board of Directors.  UEP admits that Richard K. Looper was President and COO of Cal-Maine Foods, Inc., and is Vice-Chairman of the Board of Directors of Cal-Maine Foods, Inc.; and that Mr. Looper served as a member of UEP's Board of Directors.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 427, and the same are therefore denied.

428.    Admitted in part; denied in part.  UEP admits that Chuck Elste of NuCal Foods, Inc.; Roger Deffner of National Food Corporation; Dolph Baker of Cal-Maine Foods, Inc.; and Jerry Kil of Moark, LLC and its subsidiary Southern New England Eggs, were members of UEP's Board of Directors at certain times during the alleged relevant time period. UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 428, and the same are therefore denied.

429.    Admitted.

430.    Admitted in part; denied in part.  UEP admits that UEP's staff employees are not individual egg farmers, and that USEM and UEA are each managed by UEP pursuant to separate management agreements.  UEP denies the remaining allegations contained in paragraph 430.

431.    Admitted in part; denied in part.  UEP admits that Gene Gregory is the former President and CEO of UEP, that Mr. Gregory has used the title President of UEA and USEM, and that Mr. Gregory is the Treasurer of the UEA PAC.  UEP further admits that Mr. Gregory was appointed Chairman of UEP's animal welfare committee in 1981, and that Mr. Gregory became Member Services Director for UEP's Midwest region in 1982.  To the extent that the allegations contained in paragraph 431 purport to characterize Gene Gregory's testimony before the U.S. House of Representatives, Committee on Agriculture, Subcommittee on Livestock, Dairy and Poultry, UEP denies Plaintiffs' characterization of that testimony, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 431.

432.    Admitted in part; denied in part.  UEP admits that Chad Gregory is Gene Gregory's son, that Chad Gregory was the Senior Vice President of UEP, and that Chad Gregory

has used the title Vice President of UEA.  UEP denies the remaining allegations contained in paragraph 432.

433.    Admitted.

434.    Admitted in part; denied in part.  UEP admits that UEP's Board of Directors is comprised of individuals affiliated with UEP members according to UEP's Articles of Incorporation and By-Laws, which are written documents that speak for themselves.  UEP denies the remaining allegations contained in paragraph 434.

435.    Admitted in part; denied in part.  UEP admits that Roger Deffner is affiliated with National Food Corporation, and served as Chairman of UEP in 2004.  UEP further admits that the following individuals were appointed to serve as chairmen for UEP committees in 2004: Roger Deffner of National Food Corporation as Chairman of the Executive Committee; Bob Krouse of Midwest Poultry Services, L.P., as Chairman of the Finance Committee; and Dolph Baker of Cal-Maine Foods, Inc., as Chairman of the Shell Egg Price Discovery Committee and the Shell Egg Marketing Committee.  To the extent that the allegations contained in paragraph 435 purport to characterize UEP's *United Voices* newsletter dated December 10, 2003, from which it appears that Plaintiffs have extracted certain allegations contained in paragraph 436, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 435.

436.    Admitted in part; denied in part.  UEP admits that UEP published a document titled "United Egg Producers Certified Companies & Licensed Marketers" dated September 3, 2008.  To the extent that the allegations contained in paragraph 436 purport to characterize that document, from which it appears that Plaintiffs have extracted the allegations

contained in paragraph 436, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 436.

437.    Admitted in part; denied in part.  UEP admits that Dolph Baker of Cal-Maine Foods, Inc., served as Chairman of UEP's Executive Committee and Shell Egg Price Discovery Committee in 2007.  UEP admits that Roger Deffner of National Food Corporation served as Chairman of UEP's Shell Egg Marketing Committee and Long Range Planning Committee in 2007.  UEP admits that Paul Sauder of R.W. Sauder, Inc., served as Chairman of UEP's Public Relations Committee in 2007.  UEP denies the remaining allegations contained in paragraph 437.

438.    Admitted in part; denied in part.  UEP admits that Gene Gregory is the former President and CEO of UEP, and that Mr. Gregory has used the title President of UEA and USEM.  UEP further admits that USEM and UEA are each managed by UEP pursuant to separate management agreements; that UEP staff, including Mr. Gregory, attend meetings of UEP, USEM, and UEA; and that Mr. Gregory has written articles published in UEP's *United Voices* newsletter.  To the extent that the allegations contained in paragraph 438 purport to characterize those articles, UEP denies Plaintiffs' characterization of the articles, which are writings that speak for themselves.  To the extent that the allegations contained in paragraph 438 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 438.

439.    Admitted in part; denied in part.  UEP admits that UEA is managed by UEP pursuant to a management agreement and that UEP staff support UEA.  UEP denies the remaining allegations contained in paragraph 439.

440.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated October 28, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 440.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 440.

441.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated October 17, 2005, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 441.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 441.

442.    Admitted in part; denied in part.  UEP admits that UEP is a Capper-Volstead Agricultural Cooperative.  UEP admits that it does not grow, harvest, or compete for the sale of eggs or other agricultural products.  UEP denies the remaining allegations contained in paragraph 442.

443.    Denied.  The allegations contained in paragraph 443 constitute conclusions of law to which no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 443.

444.    Denied.  To the extent that the allegations contained in paragraph 444 purport to characterize a USDA publication titled "Understanding Capper-Volstead," UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 444 constitute conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 444.

445.    Denied.  The allegations contained in paragraph 445 constitute conclusions of law to which no responsive pleading is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 445.

446.    Admitted in part; denied in part.  UEP admits that that certain UEP members perform more than one step in the process of bringing an egg to market.  UEP further admits that egg producers may mill feed; hatch chicks; rear pullets and hens; purchase eggs; and wash, candle, grade, store, transport and distribute eggs.  To the extent that the allegations contained in paragraph 446 constitute conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 446.

447.    Denied.

448.    Admitted in part; denied in part.  UEP admits that it does not wash, candle, grade, break, pasteurize, package, store or distribute its member' eggs.  UEP denies the remaining allegations contained in paragraph 448.

449.    Admitted.

450.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 450, and the same are therefore denied.

451.    Denied.  The allegations contained in paragraph 451 purport to characterize a case report prepared by the National Advertising Division of the Better Business Bureau.  UEP denies Plaintiffs' characterization of the report, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 451.

452.    Admitted in part; denied in part.  UEP admits that UEP published a Member Booklet, from which it appears that Plaintiffs have extracted certain allegations contained in paragraph 452.  UEP denies Plaintiffs' characterization of that publication, which is

a writing that speaks for itself.  To the extent that the remaining allegations contained in paragraph 452 are conclusions of law, no response is required, and they are thus deemed denied. UEP denies the remaining allegations contained in paragraph 452.

453.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated May 24, 2006, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 453.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 453.

454.    Denied.  To the extent that the allegations contained in paragraph 454 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 454.

455.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated January 20, 2009, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 455.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  To the extent that the remaining allegations contained in paragraph 455 are conclusions of law, no response is required, and they are thus deemed denied UEP denies the remaining allegations contained in paragraph 455.

456.    Denied.  To the extent that the allegations contained in paragraph 456 purport to characterize a 2004 *Feedstuffs* article, UEP denies Plaintiffs' characterization of that article, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 456 are conclusions of law, no response is required, and they are thus deemed denied. UEP denies the remaining allegations contained in paragraph 456.

457.    Admitted in part; denied in part.  UEP admits that individuals affiliated with cage manufactures may have been invited to certain UEP meetings.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the last sentence of paragraph 457, and the same are therefore denied.  To the extent that the allegations contained in paragraph 457 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 457.

458.    Admitted in part; denied in part.  UEP admits that individuals affiliated with Chore Time Egg Production Systems and Cargill Kitchen Solutions were invited to certain UEP meetings.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 458, and the same are therefore denied.  To the extent that the allegations contained in paragraph 458 are conclusions of law, no response is required, and they are thus deemed denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations about the beliefs of Mr. Mueller, and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 458.

459.    Admitted it part; denied in part.  UEP admits that some of the eggs produced by certain UEP members are contract-farmed.  To the extent that the remaining allegations contained in paragraph 459 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 459.

460.    Admitted it part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated February 2, 2007, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 460.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 460.

461.   Admitted in part; denied in part.  UEP admits that the UEP Long Range Planning Committee held a meeting on August 7, 2007, in Salt Lake City, Utah, and that the minutes from this meeting state that the individuals identified in the second and third sentences of paragraph 461 attended the meeting.  The remaining allegations contained in paragraph 461 purport to characterize the minutes from this meeting, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 461.  UEP denies Plaintiffs' characterization of the meeting minutes, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 461.

462.   Admitted in part; denied in part.  UEP admits that the UEP Long Range Planning Committee held a meeting on August 7, 2007, in Salt Lake City, Utah.  The remaining allegations contained in paragraph 462 purport to characterize the minutes from this meeting, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 462. UEP denies Plaintiffs' characterization of the meeting minutes, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 462.

463.   Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated October 26, 2007, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 463.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 463 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 463.

464.   Admitted in part; denied in part.  UEP admits that UEP recommended that members adopt voluntary measures to manage supply at certain times during the alleged relevant time period.  UEP denies the remaining allegations contained in paragraph 464.

-111-

465.     Denied.

466.     Admitted in part; denied in part.  UEP admits that UEP's Board of Directors held a meeting on January 25, 2005.  The remaining allegations contained in paragraph 466 purport to characterize the minutes from this meeting, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 466.  UEP denies Plaintiffs' characterization of the meeting minutes, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 466.

467.     Denied.

468.     Denied.

469.     Denied.  To the extent that the allegations contained in paragraph 469 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 469.

470.     Denied.  To the extent that the allegations contained in paragraph 470 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 470.

471.     Denied.  To the extent that the allegations contained in paragraph 471 purport to characterize plaintiffs' state of mind, UEP lacks knowledge or information sufficient to form a belief as to the truth of these allegations, and the same are therefore denied.  To the extent that the allegations contained in paragraph 471 purport to characterize a *Wall Street Journal* article, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 471.

472.     Denied.  To the extent that the allegations contained in paragraph 472 purport to characterize plaintiffs' state of mind, UEP lacks knowledge or information sufficient

to form a belief as to the truth of these allegations, and the same are therefore denied.  To the extent that the allegations contained in paragraph 472 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 472.

473.    Denied.  To the extent that the allegations contained in paragraph 473 purport to characterize a *Wall Street Journal* article, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 473.

474.    Denied.  To the extent that the allegations contained in paragraph 474 purport to characterize a *Wall Street Journal* article, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 474.

475.    Denied.  To the extent that the allegations contained in paragraph 475 purport to characterize an article published in the *Wall Street Journal*, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 475.

476.    Denied.

477.    Admitted in part; denied in part.  UEP admits that, at certain times during the alleged relevant time period, certain groups endeavored to, among other things, ban caged egg production and to encourage purchasers to buy only cage-free eggs.  UEP denies the remaining allegations contained in paragraph 477.

478.    Denied.

479.    Denied.  To the extent that the allegations contained in paragraph 479 purport to characterize an unidentified document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 479.

480.    Denied.  To the extent that the allegations contained in paragraph 480 purport to characterize documents, UEP denies Plaintiffs' characterization of the documents, which are writings that speak for themselves.  UEP denies the remaining allegations contained in paragraph 480.

481.    Admitted in part; denied in part.  UEP admits that GolinHarris purchased print ads in grocer trade publications, sent letters to retailers and promoted television interviews, among other things, to educate retailers about the UEP animal welfare program.  To the extent that the allegations contained in paragraph 481 purport to characterize an unidentified document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 481.

482.    Denied.  To the extent that the allegations contained in paragraph 482 purport to characterize an email, UEP denies Plaintiffs' characterization of the email, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 482.

483.    Denied.

484.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 484, and the same are therefore denied. To the extent that the allegations contained in paragraph 484 purport to characterize unidentified documents, UEP denies Plaintiffs' characterization of the documents, which are writings that speak for themselves.  UEP denies the remaining allegations contained in paragraph 484.

485.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 485, and the same are therefore denied. UEP denies the remaining allegations contained in paragraph 485.

486.    Denied.  To the extent that the allegations contained in paragraph 486 purport to characterize plaintiffs' state of mind, UEP lacks knowledge or information sufficient to form a belief as to the truth of these allegations, and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 486.

487.    Denied.  To the extent that the allegations contained in paragraph 487 purport to characterize a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 487.

488.    Denied.  To the extent that the allegations contained in paragraph 488 purport to characterize a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 488.

489.    Denied.  To the extent that the allegations contained in paragraph 489 purport to characterize an email, UEP denies Plaintiffs' characterization of the email, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 489.

490.    Denied.

491.    Denied.  To the extent that the allegations contained in paragraph 491 purport to characterize plaintiffs' state of mind, UEP lacks knowledge or information sufficient to form a belief as to the truth of these allegations, and the same are therefore denied.  To the extent that the allegations contained in paragraph 491 are conclusions of law, no response is

required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 491.

492.    Denied.

493.    Denied.  To the extent that the allegations contained in paragraph 493 purport to characterize plaintiffs' state of mind, UEP lacks knowledge or information sufficient to form a belief as to the truth of these allegations, and the same are therefore denied.  To the extent that the allegations contained in paragraph 493 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 493.

494.    Denied.

495.    Denied.  To the extent that the allegations of paragraph 495 purport to characterize documents, UEP denies Plaintiffs' characterization of these documents, which are writings that speak for themselves.  UEP denies the remaining allegations of paragraph 495.

496.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 496, and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 496.

497.    Denied.  To the extent that the allegations contained in paragraph 497 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 497.

498.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 498, and the same are therefore denied.

499.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 499, and the same are therefore denied.

500.     Denied.  To the extent that the allegations contained in paragraph 500 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 500.

501.     Denied.  To the extent that the allegations contained in paragraph 501 purport to characterize plaintiffs' state of mind, UEP lacks knowledge or information sufficient to form a belief as to the truth of these allegations, and the same are therefore denied.  To the extent that the allegations contained in paragraph 501 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 501.

502.     Denied.  To the extent the allegations contained in paragraph 502 are conclusions of law, no response is required and they are deemed denied.  UEP denies the remaining allegations contained in paragraph 502.

503.     Denied.

504.     Denied.  To the extent that the allegations contained in paragraph 504 purport to characterize plaintiffs' state of mind, UEP lacks knowledge or information sufficient to form a belief as to the truth of these allegations, and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 504.

505.     Denied.  To the extent that the allegations contained in paragraph 505 purport to characterize plaintiffs' state of mind, UEP lacks knowledge or information sufficient to form a belief as to the truth of these allegations, and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 505.

506.    Denied.  To the extent that the allegations contained in paragraph 506 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 506.

507.    Denied.  To the extent that the allegations contained in paragraph 507 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 507.

508.    Denied.  To the extent that the allegations contained in paragraph 508 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 508.

509.    UEP incorporates the responses to the allegations contained in paragraphs 1-508 above as if fully contained herein.

510.    Denied.  To the extent that the allegations contained in paragraph 510 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 510.

511.    Denied.  To the extent that the allegations contained in paragraph 511 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 511.

512.    Denied.  To the extent that the allegations contained in paragraph 512 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 512.

513.    Denied.  To the extent that the allegations contained in paragraph 513 are conclusions of law, no response is required, and they are thus deemed denied. UEP denies the remaining allegations contained in paragraph 513.

## REQUEST FOR RELIEF

WHEREFORE, UEP denies that Plaintiffs are entitled to any of the relief requested in the Third Amended Complaint, and respectfully requests that the Court enter judgment in its favor on all claims.

## AFFIRMATIVE DEFENSES

UEP asserts the following affirmative defenses. In stating these affirmative defenses, UEP does not concede that it has the burden of proof on any of the aforementioned defenses and denials and does not make any admissions as to liability, which it disputes. UEP adopts by reference any defense not otherwise expressly contained herein that is pleaded by any other Defendant in this action.

1.      The Third Amended Complaint fails to state a claim upon which relief may be granted.

2.      Plaintiffs are barred from recovering damages or obtaining injunctive relief on the claims asserted in the Third Amended Complaint by the doctrines of estoppel, waiver, laches, ratification and/or unclean hands.

3.      Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitation.

4.      Plaintiffs' claims are barred because Plaintiffs have not suffered any damages as a result of matters alleged in the Third Amended Complaint.

5.      Plaintiffs' claims for injunctive relief are invalid and improper in that Plaintiffs have failed to allege, and are incapable of demonstrating, irreparable harm and/or the absence of any adequate remedy at law.

6.      There is no direct and proximate causal connection between any claim of harm or injury alleged by Plaintiffs and any acts alleged to have been committed by UEP.

7.     Plaintiffs are barred, in whole or in part, from pursuing damages for the claims asserted in the Third Amended Complaint because they failed to mitigate its damages or to otherwise take commercially reasonable steps to limit any risks or losses.

8.     Plaintiffs' damages claims are barred in whole or in part because the damages they seek are speculative or uncertain.

9.     Plaintiffs' damages claims are limited to compensation for injuries that Plaintiffs can show to have resulted from that which made defendants' conduct unlawful and to be separate from the effects of lawful activity.

10.     To the extent that Plaintiffs seek to collect treble damages, attorneys' fees and expenses, and other monetary relief, they seek a recovery that is so grossly excessive and inequitable that it would violate the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution, or that is in excess of the limitations provided under other laws.

11.     Plaintiffs lack standing to bring some or all of their claims.

12.     Plaintiffs have suffered no antitrust injury.

13.     Plaintiffs have failed to plead that they purchased products in any properly defined market or sub-market.

14.     Plaintiffs' claims are barred, in whole or in part, because any conduct engaged in by UEP was reasonable and based on independent, legitimate business and economic justifications.

15.     Plaintiffs' claims are barred, in whole or in part, because legitimate standard setting through cooperatives does not give rise to antitrust liability.

16.     Plaintiffs' claims are barred, in whole or in part, because the claims are governed by the rule of reason, and Plaintiffs have not alleged or cannot prove the elements of a rule of reason claim.

17.     Plaintiffs' claims are barred, in whole or in part, because the pro-competitive benefits of the conduct alleged by Plaintiffs outweighs any alleged anti-competitive effects.

18.     UEP has not engaged in any concert, combination or conspiracy to restrain trade.

19.     Plaintiffs' damages, if any, were caused by the conduct of third parties.

20.     UEP cannot conspire or attempt to conspire with its cooperative members because they enjoy intra-enterprise immunity.

21.     Plaintiffs have failed to plead the alleged fraud and concealment with requisite particularity.

22.     Plaintiffs have failed to plead the alleged conspiracy with requisite particularity.

23.     Plaintiffs' claims are barred, in whole or in part, by the *Noerr-Pennington* doctrine, the state action doctrine, and/or the doctrine of implied immunity.

24.     Plaintiffs' claims are barred because the alleged conduct that is the subject of the Third Amended Complaint was caused by, due, based upon, or in response from directives, laws, regulations, authorizations, policies and/or acts of governments and/or their agencies.

25.     UEP is immune from liability pursuant to the Capper-Volstead Act, 7 U.S.C. § 291 *et seq*.

26.     UEP is immune from liability pursuant to Section 5 of the Cooperative Marketing Act, 7 U.S.C. § 455.

27.     UEP is immune from liability pursuant to Section 6 of the Clayton Act, 15 U.S.C. § 17.

28.     UEP is immune from liability pursuant to the Agriculture Marketing Agreement Act, 7 U.S.C. § 601 *et seq.*

29.     UEP is immune from liability pursuant to the Export Trading Company Act, 15 U.S.C. § 4001 *et seq.*

30.     UEP is immune from liability pursuant to the Webb-Pomerene Act (Export Trade Act), 15 U.S.C. § 61 *et seq.*

31.     Plaintiffs' claims are barred, in whole or in part, by the Agricultural Marketing Act of 1929, 12 U.S.C. § 1141(a).

32.     If, for any reason, any or all of the alleged acts and omissions of defendants were not within the scope of the foregoing immunities, any resulting damages should be equitably mitigated.

33.     In addition to being barred by the above-referenced federal statutes, Plaintiffs' claims are barred, in whole or in part, by the state statutory equivalents of those federal statutes[1] and by the harmonization principles that require state antitrust laws to be applied and construed consistently with federal antitrust laws and precedent.

---

[1] The state statutes that provide antitrust immunity for agricultural coops and their members include at least the following: ARIZ. STAT. § 44-1401; CAL. FOOD & AGRIC. CODE § 58651, *et seq.*; CAL. FOOD & AGRIC. CODE § 54038; D.C. CODE ANN. § 28-4504; IOWA CODE § 553.6; KAN. STAT. §§ 17-1634, 17-1603(c); 13 M.R.S.A. § 1772; M.C.L.A. § 445.774; MINN. STAT. 325D.55(1); MISS. CODE § 75-21-5; 79-19-51; NEB. REV. STAT. § 59-1618; NEB. REV. STAT. § 2-3801, *et seq*; NEV. REV. STAT. § 598A.040(1); N.M. STAT. § 57-1-4; 76-12-1; N.Y. GEN. BUS. LAW § 340(3); N.D. STAT. § 51-08.1-04; 10 L.P.R.A. § 257; S.D. STAT. § 37-1-3.4; TENN. STAT. § 47-25-110; UTAH CODE § 76-10-915(2)(b); UTAH CODE § 34-19-1(2); W. VA. CODE § 47-18-5(b); W. VA. CODE § 19-4-28; W.S.A. § 133.07.

34.     If any or all of the alleged acts and omissions of defendants were not within the scope of the foregoing immunities, any such technical defects should be ignored as *de minimis*.

35.     Plaintiffs cannot demonstrate that defendants' conduct was outside the scope of the foregoing immunities or that defendants' prices were unduly enhanced as a result of any or all of the alleged acts and omissions.  The United States Department of Agriculture ("USDA") was fully aware of the conduct relevant to Plaintiffs' claims, and it regularly monitors and reports upon egg prices. However, the USDA never sought to object to, or to halt, any conduct by Defendants despite the fact that Section 2 of the Capper-Volstead Act, 7 U.S.C. § 292, provides that the Secretary of Agriculture "shall issue" an order directing agricultural associations "to cease and desist" conduct that causes the prices of agricultural products to be "unduly enhanced."

36.     Plaintiffs' claims are barred, in whole or in part, by 7 U.S.C. § 292's grant of exclusive or primary jurisdiction to the United States Secretary of Agriculture.

37.     Plaintiffs' claims are barred, in whole or in part, because of a failure to join necessary and/or indispensable parties.

38.     Plaintiffs' claims are barred, in whole or in part, by their failure to comply with the notice requirements of the applicable laws.

39.     UEP did not knowingly or consciously participate in a scheme designed to achieve an unlawful objective.

40.     Plaintiffs' claims are barred, in whole or in part, by the doctrines of *in pari delicto*, involvement, participation, equal involvement, complete involvement, and unclean hands.

41.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs were co-initiators, co-conspirators, or were involved in creating, maintaining, supporting, relying on, implementing, or otherwise utilizing the conduct and programs challenged in this action.

42.     Plaintiffs' claims are barred, in whole or in part, because UEP did not act knowingly, willfully, or intentionally.

WHEREFORE, UEP respectfully requests that this Court enter judgment in favor of UEP and against Plaintiffs and award UEP its costs, attorneys' fees, and such other relief as may be just and proper.

Dated:  January 31, 2014                        Respectfully submitted,

                                                /s/ Jan P. Levine
                                                Jan P. Levine (PA 43869)
                                                Robin P. Sumner (PA 82236)
                                                PEPPER HAMILTON LLP
                                                3000 Two Logan Square
                                                18th and Arch Streets
                                                Philadelphia, PA, 19103-2799
                                                Phone: (215) 981-4714
                                                Fax:    (215) 981-4750
                                                *Attorneys for Defendant United Egg Producers, Inc.*

<u>CERTIFICATE OF SERVICE</u>

I, Whitney R. Redding, hereby certify that on January 31, 2014, the foregoing

United Egg Producers, Inc.'s Answer With Affirmative Defenses To Plaintiffs' Third Amended

Complaint was filed using the CM/ECF system, and (1) the filing is available for viewing and

downloading via the CM/ECF system and (2) the CM/ECF system will send notification of such

filing to all attorneys of record who have registered for CM/ECF updates.  On this date, the

aforementioned document was also served by e-mail on all attorneys listed on the Panel Attorney

Service List.

<div style="margin-left:40%">

<u>/s/ Whitney R. Redding</u>
Whitney R. Redding
PEPPER HAMILTON LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4121
reddingw@pepperlaw.com

</div>